(98 South. 323)

MANGINO v. TODD et al.   (8 Div. 123.)

(Court of Appeals of Alabama. Dec. 4, 1923.)

**1. Appeal and error ⬸528(1)—Record held to warrant consideration of ruling on motion for new trial.**

Bill of exceptions containing the evidence offered upon the trial of the case and the affidavits offered in support of motion for new trial, and reciting that a motion for new trial was filed and was granted, and that an exception was reserved to the court's decision and record proper setting out the motion held to warrant consideration on appeal of judgment granting motion, notwithstanding failure of bill of exceptions to contain the motion or judgment thereon, under Gen. Acts 1915, pp. 598, 722.

**2. Appeal and error ⬸1015(1)—Findings of court on evidence ore tenus not reversed unless clearly wrong.**

An appellate court will not reverse the findings of the trial court on evidence given ore tenus by witnesses before the trial judge on motion for a new trial unless clearly convinced that the judgment of the trial court is wrong and unjust.

**3. Appeal and error ⬸662(2)—Recitals in bill of exceptions as to trial court's decision on motion for new trial control.**

The court of appeals in considering the questions presented on appeal from judgment granting new trial will be governed by the recitals in the bill of exceptions as to the decision of the trial court on such motion.

**4. Appeal and error ⬸856(5)—Every ground presented by motion for new trial considered on appeal from judgment granting motion.**

Where bill of exceptions on appeal from judgment granting motion for a new trial recites that the motion was granted, that plaintiff excepted, and that previously entered judgment was set aside and the case ordered to be restored to the trial docket, the Court of Appeals on appeal from judgment granting new trial will consider the motion on each and every ground presented and the testimony offered in support thereof in determining whether the judgment granting the new trial shall be reversed.

**5. Arrest ⬸63(1) — Conditions under which officer may make arrest without warrant stated.**

To justify an arrest without a warrant under Code 1907, §§ 6268, 6269, the person arrested or sought to be arrested must have committed a public offense or threatened a breach of the peace in the presence of the arresting officer, or a felony must have been committed, though not in the presence of the officer, by the person arrested, or a felony must have been committed and the officer must have reasonable cause to believe that the person arrested ,or sought to be arrested committed such felony, or the officer must have reasonable cause to believe that the person arrested or sought to be arrested has committed a felony, or a charge on reasonable cause must have been made that the person arrested has committed a felony.

**6. Arrest ⬸63(4)—Arrest merely because officer thought liquor was being transported improper.**

A deputy sheriff, who did not know, but merely thought, that occupants of buggy were transporting prohibited liquors, was not justified in making an arrest or stopping buggy without a warrant, for purpose of ascertaining

whether it contained prohibited liquors, under Code 1907, §§ 6268, 6269, and Const. 1901, § 5.

**7. Arrest ⊜65—Officers not justified in stopping buggy in absence of probable cause.**

Officers were not justified in stopping buggy to ascertain whether it contained persons for whose arrest they had warrants, unless they had probable cause to believe that buggy contained such persons.

**8. Arrest ⊜65—Facts held not to show probable cause for arrest.**

The mere fact that a still had been raided in the neighborhood did not justify deputy officers in attempting to stop a buggy to ascertain whether it contained persons for whose arrest they had warrants, such fact not constituting probable cause for the belief that occupants of buggy were persons named in warrants; suspicion and belief not founded on facts being insufficient.

**9. Arrest ⊜65—Officers held not justified in attempting to halt buggy by information subsequently obtained.**

The fact that an occupant of a buggy which officers tried to halt sprang up and drew what looked like a pistol, and that occupants may have been conveying prohibited liquors, did not justify the attempt of the officers to halt the buggy without probable cause that persons therein were persons for whom they had warrants, since officers must have acted on an honest belief founded upon a reasonable cause existing before they made effort to stop buggy.

**10. Assault and battery ⊜10 — Officers not justified in shooting at persons who fled.**

Police officers were not justified in shooting at persons fleeing from officers while transporting intoxicating liquor, though such persons could not otherwise be overtaken.

**11. Assault and battery ⊜13 — Self-defense not available as against person running away.**

Police officer could not defend action for assault on the ground of self-defense where plaintiff received wound while running away.

**12. Assault and battery ⊜13 — Self-defense not available to officer making unauthorized effort to stop buggy.**

Where effort of police officers to halt buggy was illegal because there was no reasonable cause for belief that buggy contained persons for whom officers had warrants, the mere fact that one of the occupants drew a pistol did not make self-defense available to officer in action for assault on other occupant.

**13. Assault and battery ⊜18—All three deputies of sheriff making unauthorized effort to stop buggy responsible for shot fired by one of them.**

Where three deputy sheriffs made unauthorized effort to stop buggy during which one of the occupants of the buggy was shot by one of the officers, all three officers were equally responsible, regardless of which one fired the shot, since they were present, encouraging, aiding, and abetting each other.

**14. New trial ⊜68—Responsive verdict not disturbed on motion for new trial.**

Verdict of jury, responsive to evidence and consistent with general charge, should not be disturbed by the court on motion for new trial.

**15. New trial ⊜150(3)—Affidavit held not to justify new trial on ground of false testimony.**

Affidavit of "William Maro" that he was not plaintiff's uncle, and that plaintiff did not visit him the night during which plaintiff was alleged to have been assaulted, *held* not to justify the granting of a new trial on the ground that plaintiff's testimony that he was at uncle's home the night of the assault was willfully false, where plaintiff's testimony was that he went to his uncle, "William Morris."

**16. Appeal and error ⊜662(3)—Bill of exceptions governs with respect to evidence on motion for new trial.**

The court of appeals is governed by the bill of exceptions with respect to the evidence offered in support of motion for new trial.

**17. New trial ⊜105—Newly discovered evidence as to collateral matter not ground for new trial.**

In action for assault, a new trial will not be granted on defendant's motion merely because of newly discovered evidence showing that defendant's testimony that he was at his uncle's house during the night when assault took place was false, such testimony relating merely to a collateral matter.

Appeal from Circuit Court, Franklin County; Chas. P. Almon, Judge.

Suit by Carlo Mangino, by his next friend, Louis Mangino, against L. T. Todd and another. Verdict for plaintiff. From a judgment setting aside the verdict and granting a new trial, plaintiff appeals. Reversed and remanded, with directions.

J. Foy Guin, of Russellville, for appellant.

The first five grounds of the motion for new trial are general, fail to point out in what particular the jury erred, and cannot be considered. N., C. & St. L. v. Crosby, 194 Ala. 338, 70 South. 7; Cobb v. Hand, 12 Ala. App. 461, 68 South. 541; Ard v. Crittenden (Ala. Sup.) 39 South. 675; Parker v. Bond, 121 Ala. 529, 25 South. 898. A conflict in the testimony presents a jury question, and does not authorize the court to interfere with the verdict. Ala. S. & W. Co. v. Thompson, 166 Ala. 460, 52 South. 75. A witness cannot be impeached upon an immaterial or collateral matter. Nolan v. State, 207 Ala. 663, 93 South. 529; Washington v. State, 63 Ala. 189; Rosenbaum v. State, 33 Ala. 354; Bivens v. Brown, 37 Ala. 422; Brown v. Brown, 200 Ala. 554, 76 South. 912; Girardino v. Birmingham So. R. R., 179 Ala. 420, 60 South. 871. It is not necessary that the motion for new trial and judgment thereon be incorporated in the bill of exceptions. Bir-

mingham W. W. Co. v. Justice, 204 Ala. 547, 86 South. 389; Moneagle & Co. v. Livingston, 150 Ala. 562, 43 South. 840; Code 1907, § 2846; Acts 1911, p. 198; Acts 1915, p. 722.

Key & Key, of Russellville, for appellees.

The appeal being from a judgment granting a motion for new trial cannot be considered, since the bill of exceptions does not include the motion nor the judgment on the motion. Birmingham W. W. Co. v. Justice, 204 Ala. 547, 86 South. 389. The action of the trial court in granting a new trial, resting in his discretion, should not be disturbed. Cobb v. Malone, 92 Ala. 630, 9 South. 738; N., C. & St. L. v. Crosby, 194 Ala. 338, 70 South. 7; Ray v. Watkins, 203 Ala. 686, 85 South. 25; Adams Hdw. Co. v. Wimbish, 201 Ala. 548, 78 South. 902; Caravella Shoe Co. v. Hubbard, 201 Ala. 545, 78 South. 899; Hatfield v. Riley, 199 Ala. 390, 74 South. 380; Cole v. A. G. S., 201 Ala. 193, 77 South. 719; Price v. Price, 199 Ala. 433, 74 South. 381; Girardino v. Birmingham So. R. R., 179 Ala. 423, 60 South. 871.

BRICKEN, P. J. This appeal is from an order of the trial court in setting aside the verdict of the jury, which was returned in favor of the plaintiff, and in granting the defendant in the court below a new trial.

There are several assignments of error, all relating to this one question.

Appellant, plaintiff below, sued appellee, defendants, for an alleged unlawful assault upon the plaintiff by a deputy sheriff of Franklin county. The defendants in said action were the sheriff and, the surety on his official bond.

Upon the trial of the case there was a jury verdict for the plaintiff for the sum of $500 damages, and a judgment was accordingly entered against the defendants for said sum of $500, together with the costs, which judgment appears to have been entered upon the minutes of the trial court on the 14th day of August, 1922. On the 23d day of August, 1922, the defendants filed their motion to set aside the verdict of the jury and the judgment entered in said cause and to grant a new trial upon the following grounds: (1) The verdict of the jury was contrary to law and the charge of the court; (2) the verdict of the jury was contrary to the evidence; (3) the verdict of the jury was contrary to a preponderance of the evidence; (4 and 5) the evidence as a whole presented a complete defense to plaintiff's action; (6) the evidence disclosed that defendant acted in self-defense; (7) newly discovered evidence that plaintiff was not engaged in a legitimate business at the time and place of the alleged assault; (8) said newly discovered evidence had come to the knowledge of the defendants since the trial of said cause and could not have been discovered prior thereto by due diligence; (9) that the plaintiff and his companion testified upon the trial of said case that, at the time of said alleged assault, they were returning from the home of the uncle of the plaintiff where the plaintiff had been to collect a debt, and that said evidence was willfully false.

[1] Attached to said motion was the affidavit of one William Maro to the effect that said William Maro was not related to the plaintiff by blood or marriage and that, on the night plaintiff was shot, the plaintiff did not come to the home of said William Maro. One James Maro also made affidavit that the facts stated in the affidavit of William Maro were true. Said affidavits, together with all the original evidence offered upon the trial of said case, was all the evidence offered in support of the motion as stated in the bill of exceptions. Said motion was in writing and is set out in the record proper, and is therefore properly presented by said record. General Acts of Alabama, 1915, p. 598; Powell v. Folmar; 201 Ala. 271, 78 South. 47; Stover v. State, 204 Ala. 311, 85 South. 393; Acts 1915, p. 722.

The trial court rendered a judgment on said motion granting the same, and setting aside the verdict of the jury in said case and directing the clerk to restore said case to the trial docket. The record presents the formal judgment entered upon said motion.

As stated, the appeal in this case was taken by the appellant from the judgment of the trial court upon the motion for a new trial.

The appellees contend that this court cannot consider this appeal: First, because the bill of exceptions does not include the motion; and, second, because the bill of exceptions does not include the judgment on the motion, and the case of Birmingham Waterworks Co. v. Justice, 204 Ala. 547, 86 South. 389, is cited in support of appellees' position.

The position of the appellees cannot be sustained with respect to this insistence. The Act of 1915, p. 722, does not require the motion for a new trial to be set out in the bill of exceptions. The motion being in writing is a part of the record in said case and is properly presented by the record and not by the bill of exceptions. Powell v. Folmar, supra. The case of Birmingham Waterworks Co. v. Justice, supra, cited by appellees, is an authority to the effect that where the decision of the trial court upon a motion for a new trial is shown both by the record proper and the bill of exceptions, the recitals in the bill of exceptions will control, and this for the reason that the Act of 1915, p. 722, requires that the decision of the trial court upon the motion for a new trial shall be presented by the bill of exceptions.

The bill of exceptions in this case shows that a motion for a new trial was filed. It shows the substance of the evidence offered

in support of said motion. It shows the decision of the court in the following language:

"November 18, 1922, motion granted and the plaintiff excepts and the verdict of the jury is set aside and held for naught and the clerk will restore said cause to the trial docket.

"C. P. Almon, Judge."

It also shows that the plaintiff reserved an exception to the decision of the court. We therefore hold that the bill of exceptions in this case presents for our consideration the decision of the trial court upon the motion for a new trial in compliance with every requirement of the Act of 1915, p. 722. Birmingham Waterworks Co. v. Justice, supra; Powell v. Folmar, supra; Bank of Tallassee v. Elmore Fertilizer Co., 16 Ala. App. 465, 78 South. 648; Patterson v. Holt. 16 Ala. App. 439, 78 South. 637; Benton v. State, 16 Ala. App. 192, 76 South. 476; Stover v. State, 204 Ala. 311, 85 South. 393.

[2] It is a rule of recognized standing in this state that an appellate court will not reverse the findings of the trial court on evidence given ore tenus by witnesses before the trial judge who has the opportunity to observe them and their bearing, unless the appellate court is clearly convinced that the judgment of the trial court is wrong and unjust.

[3, 4] In considering the questions presented, this court will be governed by the recitals in the bill of exceptions as to the decision of the trial court upon said motion, and that is that the motion was granted, and that the plaintiff excepted, and that said judgment was set aside and the case ordered to be restored to the trial docket, and, in so doing, we will consider the motion upon each and every ground presented and the testimony offered in support thereof, and determine whether or not the judgment of the trial court upon the motion for a new trial should be reversed and annulled and the cause remanded with directions to the trial court.

The plaintiff contended in the court below that in the early morning of May 21, 1921, while riding along a public highway of Franklin county, Ala., in a buggy with a companion, he was assaulted and shot by a deputy sheriff of said county without justification or excuse. That is to say, the plaintiff was unlawfully assaulted and shot by said officer. It is not denied that L. T. Todd, one of the defendants, was the sheriff of Franklin county, and it further is not denied that the United States Fidelity & Guaranty Co., the other defendant, at the time of the alleged shooting was the surety on the official bond of said sheriff. It was admitted that Sid Malone was a deputy sheriff of the defendant L. T. Todd and that he was armed with a shotgun and a pistol, and that the shooting done by him was with a pistol. It is further shown by the testimony of Dr. L.

J. Graves that the plaintiff received a gunshot wound in the left leg, three or four inches below the kneecap, and that said wound appeared to have been made by a shot from a pistol of rather large caliber which went in from behind the leg and passed ed between the two bones of the leg. It thus appears from the record that the plaintiff, beyond controversy, established the allegations of his complaint unless he was shot by the deputy sheriff under such circumstances as justified the shooting.

It was contended by the defendants that if the plaintiff was shot by a deputy sheriff, as alleged in his complaint, such shooting was done in self-defense.

Counsel for the appellees state the facts of their defense in brief as follows:

"The sheriff's posse went out on the morning of May 21, 1921, to raid a still, which they did, and, after doing so were waiting by the roadside near where the still had been raided. They heard a conveyance coming, and, as one of the witnesses said, they thought it was one of the wildcatters 'getting away with the booze.' The men in the buggy looked like the men that the deputies were after, and, when the deputies undertook to halt the buggy to ascertain if they were the men that they were after, the men in the buggy whipped up the mule and one of them raised up and pulled what the deputies took to be a pistol from his pocket. Thereupon the deputies fired. That the men threw a bottle of whisky from the buggy and kept driving. One of these men in the buggy was the plaintiff, who got shot. The officers believed that the plaintiff and his companion were the men who had been making whisky. That the plaintiff was some five or ten miles from his home at two o'clock in the morning. That the plaintiff and his companion were violating the prohibition law, in that they had a bottle of whisky, even if they had not been manufacturing it."

[5] Arrests in this state may be made by an arresting officer with a warrant as is provided in section 6268 of the Code of Alabama of 1907, and an arrest may also be made by an officer without a warrant as is provided in section 6269 of the Code of Alabama of 1907. In order to justify an arrest without a warrant, the person arrested, or sought to be arrested, must either have committed a public offense or threatened a breach of the peace in the presence of the arresting officer; or a felony must have been committed, though not in the presence of the officer, by the person arrested; or a felony must have been committed and the officer must have reasonable cause to believe that the person arrested, or sought to be arrested, committed such felony, or the officer must have reasonable cause to believe that the person arrested, or sought to be arrested, has committed a felony; or a charge upon reasonable cause must be made that the person arrested has committed a felony.

Under the proof in this case, it is without dispute that the officers who attempted to halt the plaintiff and his companion had no warrant for their arrest or for the arrest of either of them. According to the testimony of the witness Will West, said witness and Sid Malone and Curtis Malone, all deputy sheriffs, were together at the house of one At Bishop. It appears that the two Malones were sent by the sheriff of Franklin county to assist the witness Will West in making a raid; that the witness West made the raid alone but did not completely destroy the still which he raided, and that these deputies decided to go back and complete the destruction of the still; that while they were getting ready to start, waiting for one Lawler to come with a car, they heard a buggy coming along and that someone made inquiry to know what it meant; that he, West, said, "I guess that is some of them fellows getting out from over there, they are getting away with the booze." The witness testified that he meant several persons named but who did include the plaintiff or his companion; that thereupon Mr. Malone stated that they had better go down and see about them, and that they walked on down to the road and thought it was two of the persons for whom the officers were looking and that it looked very much like them; that Sid Malone asked West to step out in the road and halt the persons driving in the buggy, which he did, and that thereupon the young man who was driving rose up and jerked the lines and slapped the mule and when the witness caught at the mule he was run over, knocked down, and pushed aside; that when he got on his feet the buggy was going on up the road some distance; and that the only persons at the roadside were the deputy sheriffs.

[6] The testimony is without dispute that, at the time the officers attempted to halt the plaintiff and his companion, neither the plaintiff nor his companion had committed any offense in the presence of any of the officers, of which the officers were cognizant. It is therefore without dispute that the sole justification for the attempt on the part of the deputy sheriff to halt the plaintiff and his companion as they drove along the public highway was that officer West *guessed* that the plaintiff and his companion were hauling prohibited liquors from the still which had been destroyed, and were probably some of the parties for whom they had warrants. The hour was around two o'clock in the morning. It does not appear from the testimony of any of the officers that there was sufficient light to enable them to tell who the travelers were. The plaintiff and his companion testified that a flash light was used by one of the officers, which frightened the mule, thus causing the officer West to be knocked down.

Section 5 of the Constitution of Alabama provides in effect that the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizure or searches. Even if the deputy sheriffs had been informed that the plaintiff and his companion were hauling prohibited liquors along the public highway, they would have had no right to have seized and searched the plaintiff and his companion, except through the instrumentality of a legal warrant, or unless they knew of their knowledge that the plaintiff and his companion were then and there transporting prohibited liquors in their presence. No lawful arrest in this case was ever made or attempted to be made. In fact, under the evidence in this case, it appears that the officers did not intend to arrest the person in the buggy unless, after halting the buggy, they should find prohibited liquors therein, or should find that the travelers were two of the persons for whom they had warrants. It is quite clear that the officers had no legal right to halt the buggy without a warrant for the purpose of ascertaining whether or not it contained prohibited liquors.

[7-9] The sole inquiry is therefore whether or not said officers had the right to halt a buggy containing the plaintiff and his companion, who then were not charged with any offense and who then, in so far as said officers had actual knowledge, had committed no offense in their presence, to enable said officers to ascertain whether or not the plaintiff and his companion were two persons for whom said officers had warrants. And this inquiry is dependent upon whether or not the officers had probable cause to believe that the buggy which they heard approaching contained one or more persons for whose arrest they had warrants. The witness West testified he stated in the presence of the other officers, "I guess that is some of them fellows getting out from over there, they are getting away with the booze." and this statement was made in reply to the question, "What do you reckon that means?" That thereupon Mr. Malone said, "We had better go down and see about them;" that after reaching the road "Sid asked me to step out in the road and halt them and I did." The witness Sid Malone corroborated the statement made by West with reference to his guess except he testified that West said that he "guessed that was Porter and Baty now making a getaway," and that West further said, "Let's go out and stop them"—which declarations all show that at best the officers entertained the suspicion that the occupant, or occupants, might be one or more of the persons for whom they had warrants, and that, in order to determine whether this was true or not, they would have to stop the buggy and make an inspection of said occupants. But the officers had no legal right to halt the buggy under

these circumstances, for the mere suspicion and belief of the officers, it matters not how intensely and honestly the same were entertained, did not constitute probable cause unless the belief was founded upon facts then known to the officers which would have justified a reasonable and cautious man in believing that the occupants of the buggy were persons for whom said officers held warrants of arrest. Now what were the facts upon which such honest belief could have been founded at the time the officers went to the road for the purpose of halting the buggy? A still had been raided earlier in the night by West; he saw no one at the still; they heard a buggy coming down the road from the direction in which the still was located at a very early hour in the morning. Can these facts induce a mind seeking the truth to reach the conclusion that a reasonable and prudent man would have determined that the buggy contained one or more persons for whom the officers had warrants of arrest? We think not. Suspicion and belief not founded upon facts are insufficient. Lunsford v Dietrich, 93 Ala. 565, 9 South. 308, 30 Am. St. Rep. 79. What the effort of the officers disclosed with respect to the plaintiff and his companion after the effort to halt them is immaterial. It was not upon the facts disclosed by the effort to halt the buggy that the officers reached the determination to halt it, and the fact that one of the occupants sprang up and drew a pistol, or something that looked like a pistol, is immaterial for such last-named act was occasioned by the unlawful effort of the officers to halt the buggy.

"An illegal arrest cannot be justified by facts subsequently ascertained; nor can an arrest made for one purpose be justified for another." Cunningham v. Baker, 104 Ala. 160, 16 South. 68, 53 Am. St. Rep. 27.

The very same facts and authorities would obtain in the event the officers should have attempted to justify the arrest of the plaintiff and his companion, upon the theory that a felony had been committed, and they had reasonable cause to believe the plaintiff and his companion had committed it, because, in either and all contingencies, the officers must have acted upon an honest belief founded upon a reasonable cause which existed at the time they embarked upon their enterprise— that is, at the time they first heard the buggy coming down the road.

The fact that the occupants of the buggy may have been conveying prohibited liquors is immaterial. This fact could not have been known to the officers at the time they attempted to make the arrest in so far as the evidence in this case discloses and would not have justified, therefore, the effort to halt the buggy. Cobb v. State (Ala. App.) 97 South. 779;[1] Ex parte Stewart Cobb, 210 Ala. 252, 97 South. 783.

[1] Ante, p. 345.

[10] The further fact that the plaintiff and his companion fled from the officers, while transporting intoxicating liquors, could not and did not justify the officers firing their pistols at and towards the fleeing misdemeanants, although they could not otherwise be overtaken. Williams v. State, 44 Ala. 41; Davis v. State, 92 Ala. 20, 9 South. 616; Angling v. State, 137 Ala. 17, 34 South. 846; Handley v. State, 96 Ala. 48, 11 South. 322, 38 Am. St. Rep. 81; Birt v. State, 156 Ala. 29, 46 South. 858; Suell v. Derricott, 161 Ala. 259, 49 South. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636; Cobb v. State, supra.

The Supreme Court of Mississippi in the case of State v. Cunningham said:

"We unqualifiedly condemn this practice of the reckless use of firearms. Officers should make all reasonable efforts to apprehend criminals; but this duty does not justify the use of firearms, except in the cases authorized by law. Officers, as well as other persons, should have a true appreciation of the value of a human life." State v. Cunningham, 107 Miss. 140, 65 South. 115, 51 L. R. A. (N. S.) 1179.

[11] The defense of self-defense does not and cannot exist in this case because the plaintiff and his companion were running away at the time the plaintiff received his wound. The evidence is without dispute that plaintiff offered no resistance whatever and that the bullet entered his leg from the rear. Therefore the plea of self-defense upon the part of the deputy sheriffs cannot avail the defendants. Angling v. State, supra; Maughon v. State, 7 Ga. App. 660, 67 S. E. 842; 2 R. C. L. 473, § 30. Cobb v. State, supra.

[12] Should it be conceded that the plaintiff's companion drew a pistol at the time the officer West attempted to halt the buggy, such fact would not have justified the officers in shooting at the plaintiff and his companion under the doctrine of self-defense, because the effort to halt the buggy was illegal and unauthorized in law and was the factor which led up to the drawing of the weapon, if it was in fact drawn, by the companion of the plaintiff. The deputy sheriffs were, therefore, not free from fault and the plea of self-defense cannot be interposed unless they were free from fault.

[13] It is immaterial which one of the three officers fired the shot that produced the wound. They were all engaged upon a common enterprise or adventure which contemplated the halting of the buggy and its occupants. They were present, encouraging, aiding, and abetting each other in this enterprise, and they were all equally responsible with whichever one of them actually fired the shot that produced the wound. Tanner v. State, 92 Ala. 1, 9 South. 613.

[14] Under the pleading and proof in this case, every question presented for the consideration of the court in the motion for a new trial, under the first six grounds assigned in the motion, were questions of fact

to be determined by the jury and the verdict of the jury was responsive to the evidence and was entirely consistent with the general charge of the court, and not in conflict therewith. This being true, the finding of the jury as to the facts established by the evidence, as shown by the verdict returned into court, was outside and beyond the control of the court, and could furnish no reason or just ground for the court to interfere with the verdict or the judgment pronounced in accord therewith. Alabama Steel & Wire Co. v. Thompson, 166 Ala. 460, 52 South. 75.

[15, 16] The seventh, eighth, and ninth grounds in the motion involve the following facts, as disclosed by the testimony: The bill of exceptions shows that the plaintiff testified that, on the night of the injury, he went to his uncle's, *Wm. Morris'*, home for the purpose of collecting a debt. The ninth ground of the *motion* asserts that this statement was willfully false and, in support of this allegation, the affidavit of *William Maro* and of *James Maro* was offered to the effect that *William Maro* was not related to Carlo Mangino by blood or marriage and that Carlo Mangino, the plaintiff, did not come to *William Maro's* house on the night that plaintiff is alleged to have been shot, and that, at said time, he did not owe the plaintiff anything. If the facts set forth in this affidavit were material to the bona fides of any statement made by the plaintiff, we are not advised in what the materiality consists. According to the bill of exceptions, the plaintiff testified that he went to the home of his uncle, William *Morris*, for the purpose of collecting a debt. How does the affidavit of William *Maro* that said William *Maro* was not the uncle of the plaintiff and did not owe him anything and that the plaintiff did not come to his home on the night of the alleged shooting affect, in any way, the statement of the plaintiff with reference to his uncle, William *Morris?* We are not advised that William *Maro* and William *Morris* are one and the same person, and, with respect to the evidence offered in support of said motion, we are governed by the bill of exceptions.

[17] In addition to what we have said, the evidence offered in behalf of the ninth ground of the motion was at best evidence which related to a collateral matter, and, this being true, the trial court could not be justified in granting the motion for a new trial upon that ground. Brown v. Brown, 200 Ala. 554, 76 South. 912.

The action of the trial court in setting aside the verdict of the jury and granting a new trial in this case, not being in accord with the views herein expressed, the judgment of the trial court on the motion for a new trial is reversed, annulled, set aside, and held for naught, and the cause is remanded with directions to the lower court to over-

rule the motion for a new trial. Thompson v. Southern Railway Co., 17 Ala. App. 406, 85 South. 591; White v. Blair, 95 Ala. 148, 10 South. 257.

Reversed and remanded, with directions.