111 So.2d 21

**J. E. DENNIS**

v.

**STATE.**

**8 Div. 250.**

Court of Appeals of Alabama.

Feb. 17, 1959.

Rehearing Denied March 10, 1959.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant stands convicted of possessing prohibited alcoholic beverages.

The evidence introduced by the State shows that two deputy sheriffs of Marshall County, J. H. Allison and Hubert Hipp, were riding down a road near appellant's home.

They saw the appellant emerge from some woods forty or fifty feet from his home, and they "pulled in."

They asked appellant to come to their car. Instead the appellant bolted for his home, and the officers pursued him.

Just where the officers caught the appellant is in an uncertain state, even under the testimony of Deputy Allison, the only witness for the State who testified to this situation. In this regard Deputy Allison testified as follows:

"Q. Where was he? A. In the back door.

"Q. In the back door? A. He hadn't gone inside.

"Q. In the back yard? A. Yes sir."

Under this equivocal testimony we conclude that the appellant was either in his back door, or in his back yard, i. e. within the curtilage of his home.

Scruggs & Scruggs, Guntersville, for appellant.

Under the testimony of the appellant, his wife, and a kinsman who was present at the time the appellant was in his home when the officers entered, grabbed appellant, and searched him. All of the defense witnesses denied that the officers found any whiskey on the appellant.

Both officers testified that upon searching the appellant they found on him a half pint bottle filled with moonshine whiskey.

At the time the officers called to appellant, and at the time of the chase, they had no knowledge that the appellant had a bottle of whiskey about his person.

It is undisputed that the officers had no warrant for appellant's arrest, nor any warrant to search appellant's home or premises.

By proper objections, and by a motion to exclude, counsel for appellant has presented the question as the admissibility of the State's evidence in view of Section 210, Title 29, Code of Alabama 1940. (Pocket Part.)

Section 210, supra, in pertinent parts, reads:

"No evidence obtained by means of an illegal search of a private dwelling of any person shall be admissible in any court in the prosecution of any person for violating any of the provisions of this title (Title 29). A search is deemed illegal unless, (1) a valid search warrant has been issued in full compliance with law, including section 214 of this title, and such warrant is executed according to law."

We interpolate here that Section 214, referred to in 210, supra, pertains to the examination of the complainant and witness by a magistrate before issuing a search warrant.

■ As used in the statute we think the term "private dwelling" must be deemed to be synonymous with "dwelling," the word "private" being merely an epithetical surplusage, adding nothing to the term "dwelling."

The basic question presented by this appeal is whether the term "private dwelling," as used in Section 210, supra, shall be deemed to include the curtilage of a private dwelling rather than merely the area enclosed by its walls.

Section 5, Article 1, of the Alabama Constitution of 1901 provides:

"That the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizures or searches"—

■ It has been the doctrine of our cases that the above constitutional provision does not render inadmissible evidence illegally obtained. See particularly Shields v. State, 104 Ala. 35, 16 So. 85; Banks v. State, 18 Ala.App. 376, 93 So. 293, 297, 24 A.L.R. 1359, decided on the Supreme Court's response to a question certified by this court, it being stated in the certified question that:

"For the reason set forth, it is the unanimous opinion of the Court of Appeals that the case of Shields v. State, 104 Ala. 35, 16 So. 85, 53 Am.St.Rep. 17, and all cases following it, should be overruled and held for naught in so far as said cases may vitalize and give effect to a plain violation of the prohibitions against unreasonable searches and against self-incrimination, as provided under article 1, sections 5 and 6, of the Constitution of Alabama."

However, in its response the Supreme Court adhered to the doctrine of the Shields case, and reaffirmed it.

There can be no doubt that Section 210, supra, pertains to rights affected by Section 5, Article 1, of our Constitution, supra.

■ Where a constitutional right is involved, a statute must be construed with all reasonableness in favor of an accused.

Kreutner v. State, 202 Ala. 287, 80 So. 125. Further, statutes securing elemental rights are construed in favor of the citizen. Board of Education of Jefferson v. State Tax Commission, 237 Ala. 434, 187 So. 414.

It is also a rule of statutory construction that statutes should be construed in reference to the principles of the common law. Cloverdale Homes v. Town of Cloverdale, 182 Ala. 419, 62 So. 712, 47 L.R.A.,N.S., 607; Weaver v. Hollis, 247 Ala. 57, 22 So.2d 525.

At common law the curtilage was included with a dwelling, for, as quaintly stated by Blackstone, "for the capital house protects and privileges all its branches and appurtenances, if within the curtilage or homestall." Blackstone Com., IV, p. 225.

As stated in McNutt v. State, 23 Ala.App. 43, 121 So. 432, 434:

"But, under our decisions, *curtilage* usually includes the *yard,* or *garden,* or field which is near to and used in connection with the dwelling. In Ivey v. State, 61 Ala. 58, it is said: 'It is not necessary either should be surrounded by an enclosure. It is propinquity to the dwelling, *and the use in connection with it* (italics ours), for family purposes, which the statute regards, and not the fact of its enclosure.' "

In De Mouy v. Jepson, 255 Ala. 337, 51 So.2d 506, it was held that a devise of a "home" meant that the beneficiary should receive the house and the curtilage thereof.

All of the above principles we think compel the conclusion that the word "private dwelling," as used in Section 210, supra, means the dwelling house and its curtilage. This being so it follows that the lower court erred in overruling defendant's objections to the evidence of the whiskey which they obtained by an illegal search, which evidence was inadmissible under the provisions of Section 210, supra. It also follows that the court erred in denying appellant's motion to exclude such evidence.

Nor can the fact that the officers obtained a half pint of prohibited whiskey from the person of the appellant by their illegal search affect the conclusions above reached, for the arrest was illegal.

The officers had no warrant. They testified they did not know the appellant possessed any whiskey when they called to him. They therefore had no knowledge of any misdemeanor committed in their presence, nor probable cause to believe that any felony had been committed by the appellant.

Their chase, capture, search, and arrest of appellant being illegal, the arrest cannot be justified by facts ascertained by the arrest, since no derivative right of search can be deemed to have attached to such arrest. Mangino v. Todd, 19 Ala. App. 486, 98 So. 323; Weldon v. State, 39 Ala.App. 286, 97 So.2d 825.

The undisputed facts also eliminate any applicability of the doctrine of hot pursuit.

The Attorney General argues that Section 210, supra, is not involved, since the search of the appellant was not a search of his home. It is our view that an illegal search of a person within his private dwelling house, or its curtilage, compounds the injury to the sanctity of the home, and is clearly a search controlled by Section 210, supra.

Reversed and remanded.