UNITED STATES of America,
Plaintiff-Appellee,

v.

Pat D. LOWRY and Arturo Armando
Flores, Defendants-Appellants.

No. 71–1408.

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1972.

Rehearing and Rehearing En Banc
Denied March 7, 1972.

Lee A. Chagra, El Paso, Tex., for defendants-appellants.

William S. Sessions, U. S. Atty., Ralph E. Harris, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants in this marihuana case were charged in a five-count indictment

with violations of 21 U.S.C.A. § 176a.[1] The counts may be summarized as follows: Count one—conspiracy; count two—importation by Flores; count three—Lowry aiding and abetting importation by Flores; count four—receiving, concealing and facilitating transportation and concealment after importation by Flores; count five—Lowry aiding and abetting Flores in the conduct charged in count four.[2] The jury convicted appellants on all counts. Flores

[1]. 21 U.S.C.A. § 176a (now repealed) provided in pertinent part:

Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000.

[2].                    FIRST COUNT

That beginning on or about September 7, 1970, and continuously thereafter until on or about September 10, 1970, in the Western District of Texas, and at other places without the Western District of Texas, ARTURO ARMANDO FLORES and PAT D. LOWRY, JR., in violation of 21 U.S.C. § 176a wilfully and knowingly conspired, combined, confederated, and agreed together and with each other, and with other persons whose names to the Grand Jury are unknown, to commit offenses against the United States, that is to say, they knowingly and fraudulently conspired, with intent to defraud the United States to import and bring Marihuana into the United States contrary to law, and to receive, conceal, and facilitate the transportation and concealment of Marihuana which had been imported contrary to law, knowing the same to have been so imported; in violation of 21 U.S.C. § 176a, and in furtherance of their said conspiracy and to effect its objects, the defendants performed, among others, the following overt acts:

1. On or about September 7, 1970, ARTURO ARMANDO FLORES registered at the Downtown Holiday Inn, El Paso, Texas.

2. On September 8, 1970, ARTURO ARMANDO FLORES rented a 1970 Ford Station Wagon in El Paso, Texas.

3. On or about September 8, 1970, ARTURO ARMANDO FLORES traveled from El Paso, Texas, to Juarez, Mexico.

4. On September 9, 1970, ARTURO ARMANDO FLORES returned from Juarez, Mexico, to El Paso, Texas, driving a 1970 Ford Station Wagon.

5. On September 9, 1970, ARTURO ARMANDO FLORES received a money order in the amount of $300.00 at the Western Union Telegraph Office, El Paso, Texas.

6. On September 9, 1970, ARTURO ARMANDO FLORES registered at La Posta Motel on Mesa Street, El Paso, Texas.

7. On September 9, 1970, ARTURO ARMANDO FLORES placed a telephone call from El Paso, Texas, to New Denver, Canada.

8. On September 9, 1970, ARTURO ARMANDO FLORES placed a telephone call from El Paso, Texas, to River Falls, Wisconsin.

9. On September 9, 1970, ARTURO ARMANDO FLORES placed a telephone call from El Paso, Texas, to Alameda, California.

10. On September 10, 1970, ARTURO ARMANDO FLORES drove a 1970 Dodge Pickup north on Mesa Street to the lower old Highway 80 and on to Country Club Road, proceeding west until he arrived at State Road 260 and then proceeding north to the Canutillo area and then proceeding east on Old Highway 80 to Race Track Drive in El Paso County, Texas.

11. On September 10, 1970, ARTURO ARMANDO FLORES drove a 1970 Ford Station Wagon from the vicinity of the intersection of Mesa and Mesita Streets in El Paso, Texas, north on Mesa Street to the parking lot of the Coronado Shopping Center located on Mesa Street in El Paso, Texas.

12. On September 10, 1970, ARTURO ARMANDO FLORES parked the 1970 Ford Station Wagon above referred to, carrying 625 Pounds of Marihuana, on the parking lot of the Coronado Shopping Center in El Paso, Texas.

13. On September 10, 1970, PAT D. LOWRY, JR., met with ARTURO ARMANDO FLORES on the parking lot of the Coronado Shopping Center in El Paso, Texas.

was sentenced to 10 years and Lowry to 5 years.

On or about September 8, 1970 Flores rented a Ford station wagon in El Paso, Texas and drove it into Juarez, Mexico. The next day he returned to El Paso in the station wagon. When he crossed the border returning to Texas, his car was searched in detail as is routine for rented cars. The search revealed only some wet boots and clothing. However, Flores was recognized by a customs official as the same person who had crossed the border two months earlier in the company of one Murphy, a suspected marihuana smuggler. For this reason, or some other not revealed by the record, customs officials decided to follow Flores.

Once in El Paso Flores was under almost constant surveillance. He picked up a $300 money order at Western Union, washed some clothes, registered at a motel, and placed phone calls to Canada, Wisconsin, and California. He also changed cars, leaving the station wagon and continuing his errands in a Dodge pickup, which he apparently acquired at Murphy's residence. On the morning of September 10, Flores was seen again by the observing agents in the Ford station wagon, which now appeared to be heavily loaded. He drove to an El Paso shopping center where he parked and got out of the car. Lowry was parked in a 1962 Buick a few feet from where Flores left the station wagon. Flores got into Lowry's car and the pair drove away. Shortly thereafter they were arrested by customs agents. Subsequently, a search of the station wagon revealed 625 pounds of marihuana.

Appellants raise four points on appeal: (1) The evidence on all counts was insufficient; (2) the search of the station wagon and the arrest were illegal; (3) 21 U.S.C.A. § 176a is unconstitutional; and (4) the trial court instructed a guilty verdict.

I.  The evidence

Lowry was convicted of conspiring with Flores and with persons unknown. Count one of the indictment,[3] which sets out fourteen overt acts alleged to show a conspiracy, names Lowry only twice.

14. On September 10, 1970, PAT D. LOWRY, JR., driving a 1962 Buick automobile, picked up ARTURO ARMANDO FLORES at the parking lot of the Coronado Shopping Center in El Paso, Texas, and proceeded south on Mesa Street in El Paso, Texas, with ARTURO ARMANDO FLORES.

SECOND COUNT

That on or about September 10, 1970, in the Western District of Texas, ARTURO ARMANDO FLORES knowingly, with intent to defraud the United States, imported and brought into the United States contrary to law approximately 625 Pounds of Marihuana.

THIRD COUNT

That on or about September 10, 1970, in the Western District of Texas, PAT D. LOWRY, JR., aided and abetted Arturo Armando Flores in the commission of an offense against the United States, that is to say, PAT D. LOWRY, JR., aided, abetted, counseled and induced Arturo Armando Flores, with intent to defraud the United States, to import and bring into the United States contrary to law approximately 625 Pounds of Marihuana.

FOURTH COUNT

That on or about September 10, 1970, in the Western District of Texas, ARTURO ARMANDO FLORES, with intent to defraud, received and concealed, and facilitated the transportation and concealment, after importation, of approximately 625 Pounds of Marihuana, knowing the same to have been imported and brought into the United States contrary to law.

FIFTH COUNT

That on or about September 10, 1970, in the Western District of Texas, PAT D. LOWRY, JR., aided and abetted Arturo Armando Flores in the commission of an offense against the United States, that is to say, PAT D. LOWRY, JR., aided, abetted counseled and induced Arturo Armando Flores, with intent to defraud the United States, to receive and conceal, and to facilitate the transportation and concealment, after importation, of approximately 625 Pounds of Marihuana, knowing the same to have been imported and brought into the United States contrary to law.

3.  See footnote 2, *supra.*

13. On September 10, 1970, PAT D. LOWRY, JR., met with ARTURO ARMANDO FLORES on the parking lot of the Coronado Shopping Center in El Paso, Texas.

14. On September 10, 1970 PAT D. LOWRY, JR., driving a 1962 Buick automobile, picked up ARTURO ARMANDO FLORES at the parking lot of the Coronado Shopping Center in El Paso, Texas, and proceeded south on Mesa Street in El Paso, Texas, with ARTURO ARMANDO FLORES.

Lowry was also convicted of aiding and abetting the importation of marihuana (count three) and of aiding and abetting concealment and transportation of marihuana illegally imported (count five).[4] The Government's evidence on counts three and five was the same used on count one, namely, that when Flores parked his station wagon Lowry was either waiting or immediately drove up to a point a few feet away, and the two then drove off together.

Upon a challenge to the sufficiency of the Government's evidence, we must sustain the verdict of guilty if there is substantial evidence, taking the view most favorable to the Government, to support it. United States v. Glasser, 1944, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704. "Substantial evidence" in this context means evidence that a reasonably minded jury could accept as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. United States v. Barfield, 5 Cir. 1971 [447 F.2d 85]; United States v. Reid, 5 Cir. 1971 [441 F.2d 1089]; United States v. Warner, 5 Cir. 1971, 441 F.2d 821.

United States v. Harper, 5th Cir. 1971, 450 F.2d 1032. We find the record in the instant case devoid of "substantial evidence" that Lowry conspired with Flores or anyone else to import marihuana or aided and abetted the smuggling and transportation of marihuana. Prior to the parking lot rendezvous, the eight to ten customs agents following Flores had never seen nor heard of Lowry and had no reason to suspect him of criminal activity. Moreover, Lowry did not leave his car when he picked up Flores so there is no reason to believe he even saw the marihuana in the station wagon or knew of its existence. The parking lot meeting is simply too fragile a thread to hang this conviction on. Lowry's motion for acquittal should have been granted.

Turning to Flores, we find insufficient evidence to convict him of conspiracy (count one) or smuggling (count two). Having already concluded the record does not support a Flores-Lowry conspiracy, we must decide if Flores conspired with some third party. The only apparent candidate is one Peter Nier who was cryptically referred to during the testimony of the customs officers. Nier's status was never made clear, but it appears he owned the Dodge pickup that Flores used for part of one day. Whatever his status, there is no evidence he conspired with Flores to violate 21 U.S.C.A. § 176a.

The essential elements of a conspiracy are an agreement by two or more persons to combine for an illegal purpose and an overt act by one member in furtherance of the agreement, United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). Since conspiracies are usually hatched in secrecy, they are difficult to prove, often requiring that circumstantial evidence gleaned from the alleged conspirators' overt acts be used to prove the agreement.[5] In the instant case there is no substantial evi-

---

4. See footnote 2, *supra.*

5. . . . The essential elements of the federal crime of conspiracy, 18 U.S.C. § 371, are an agreement by two or more persons to combine efforts for an illegal purpose and an overt act *by one* in furtherance of the agreement. . . . Since a conspiracy by its very nature is born and clothed in secrecy, the first element of the offense—agreement—is seldom susceptible of direct proof. Proof of the agreement or common purpose therefore must rest upon inferences drawn from

dence, circumstantial or otherwise, of an agreement nor of the participation in illegal acts by anyone but Flores. Without an agreement and two or more parties there can be no conspiracy.

The evidence underpinning count two is similarly tenuous. Flores clearly possessed the marihuana. Furthermore, the jury might have reasonably concluded from the testimony of the Government witnesses that the marihuana was imported. The gap in the prosecution's evidence is in respect to the act of importation. When Flores crossed the border on September 8 his car was carefully checked and was found to be "clean." He was arrested a day and a half later. During the intervening time he was followed by eight to ten customs agents. It appears from the record that the agents lost contact with Flores at least once but it is not clear for how long. They did not, however, observe him return to Mexico, meet anyone at the border, or take any other actions from which importation could be inferred. In fact, the Government made no attempt to show how or when Flores imported the marihuana. The district court erred in not granting Flores' motion of acquittal on counts one and two.

## II. The search

During Flores' peregrinations through El Paso, he was followed most of the time by federal customs officers. On September 10, after Flores had parked the station wagon at the shopping center and had driven away with Lowry, Agent Medellin approached the station wagon. He testified that when he looked through the windows of the parked vehicle he could see what appeared to be marihuana, partially covered by a sleeping bag and a tarpaulin.

Medellin radioed this information to the officers who were following Lowry's car. Soon, if not immediately after receiving the radio message, the officers stopped appellants and arrested them. Subsequently, the station wagon was opened and found to contain 625 pounds of marihuana. The officers had no search or arrest warrant.

Appellants contend (1) that the agents lacked probable cause to arrest them since at the time of the arrest the presence of marihuana in the station wagon had not been confirmed, and (2) that the warrantless search of the station wagon was illegal because of the absence of exigent circumstances.

In July, 1970 Flores crossed the border from Mexico into Texas in the presence of a suspected marihuana smuggler, Murphy. On September 8, 1970 he traveled to Mexico in a rented car. He returned the next day and his car was searched. No contraband was found but wet boots and clothing in the car, coupled with the past association with the suspected smuggler, raised the suspicion of agents at the border. Flores was followed and on September 9 went to Murphy's residence where he left his car and drove away in a muddy pickup. He then made long distance calls to Canada, California, and Wisconsin, which heightened the suspicion of the agents who believed he was part of a smuggling ring. Considering this background, it is not surprising that the interest of the pursuing agents reached a new peak when on September 10 they saw Flores in the heavily loaded station wagon. When Flores left the car in the shopping center parking lot, Agent Medellin approached it, which he had a right to do on public property. From outside

relevant and competent circumstantial evidence—ordinarily, the acts and conduct of the conspirators themselves. . . . Once the existence of the agreement or common scheme of conspiracy is shown, however, *"slight evidence"* is all that is required to connect a particular defendant with the conspiracy. . . . And

once it is shown that a particular defendant joined the conspiracy, the acts of his co-conspirators done in furtherance of the conspiracy are attributable to him and he becomes equally liable for them. United States v. Warner, 5th Cir. 1971, 441 F.2d 821, 830.

the car, Medellin could see "debris," which he believed to be marihuana. He radioed this information to Agent Robinson who then arrested appellants.

We believe Agent Medellin's visual detection of the marihuana from outside the station wagon was proper under the "plain view" rule. This Court has said, "Items in plain view of law enforcement officers who have a legitimate right to be in a position to have that view are not discovered as a result of a search." United States v. Atkinson, 5th Cir., 450 F.2d 835. The station wagon was left in a public parking lot. Agent Medellin had a right to be in the parking lot and to observe that which was in plain view inside the car.

■ We also find the arrest of Flores valid. Appellants were in a moving car. During the prior surveillance of Flores, he had driven evasively. Once Medellin observed the marihuana in the station wagon and radioed this information to the officers following appellants there was probable cause to arrest Flores. The United States Supreme Court said of warrantless arrests:

> Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man *in believing that the petitioner had committed or was committing an offense.* Emphasis added.

Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In the instant case Medellin's radio report of his observation of marihuana was sufficient to "warrant a prudent man in believing that [Flores] had committed . . . an offense." [6]

### III. The statute

■ In Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the Supreme Court held the presumption provision of 21 U.S.C.A. 176a[7] unconstitutional. That provision is not at issue in this case but appellants argue that § 176a is unconstitutional in its entirety. This question has been resolved in this Circuit adversely to appellants. United States v. Warner, 5th Cir. 1971, 441 F.2d 821, 833.

### IV. The charge

■ Appellants argue that the following portion of the court's charge to the jury instructed a verdict of guilty against them:

> If you accept the testimony of the witnesses of the Government and the inferences the Government would have you draw therefrom, then the evidence is sufficient for you to find these defendants and each of them guilty beyond a reasonable doubt.

The Government replies that this "exact" charge was approved by this Court in United States v. Blue, 5th Cir. 1970, 430 F.2d 1286. The charge in *Blue* said in pertinent part:

> I will state to you in passing, if you accept the testimony of these witness-

---

6. We find no merit in appellants' contention that the searches of the Dodge pickup and Lowry's Buick were illegal. The pickup was first seen at the residence of Murphy, a supected marihuana smuggler. Flores drove it for a day and then left it at a different location. The agent who found the pickup after Flores abandoned it was justified in believing that if he left the scene to obtain a warrant the vehicle might be gone when he returned. The search of Lowry's Buick was within the bounds permissible incident to a lawful arrest.

7. Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury.

es, then there is sufficient evidence for you to find each of the Defendants guilty under this count. . . . If you believe the evidence of the Government or these witnesses here, there is sufficient evidence for you to find these Defendants guilty.

The charges clearly differ. The *Blue* jury was told it could convict if it believed the prosecution testimony. In the instant case the jury was told the evidence was sufficient if it accepted the Government witnesses' testimony *and* the *inferences* the Government urged should be drawn therefrom. Moreover, *Blue* was a direct evidence case. Two eyewitnesses saw Blue leave the scene of the holdup. In contrast this case is built largely on circumstantial evidence. In such a case the likelihood of prejudice resulting from the quoted charge is far greater than in *Blue*. The court told the jury essentially that there was sufficient evidence to convict unless it believed the Government witnesses were lying or that the inferences the Government urged were improbable. This impermissibly shifted the burden of proof to the accused, requiring them to come forward to rebut the Government's prima facie case that the court announced had been made.[8] Flores' conviction must be reversed and remanded for a new trial on count four.

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

8. We note in passing that in United States v. Womack, 5th Cir. 1972, 454 F.2d 1337,

we disapproved further use of the *Blue* charge in this Circuit.