282 So.2d 696

**Thearon SHIPMAN et al.**

v.

**STATE.**

**4 Div. 140.**

Court of Criminal Appeals of Alabama.

March 20, 1973.

Rehearing Denied April 17, 1973.

John S. Gonas, Jr., Mobile, for appellants.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

**PER CURIAM.**

Appellants were jointly indicted in Houston County for unlawfully possessing heroin or discetylmorphine or salt thereof. They were tried jointly before a jury and convicted of possession, an alternative averment in the indictment. The trial court, after proper allocution in the presence of defendants' counsel, sentenced each to eight years imprisonment in the penitentiary. Separate judgments were rendered. The appeals to this Court are embraced in one record. The defendants were represented in the trial court by employed counsel and here by different employed counsel.

The manager of Danley Furniture Company in Dothan, Alabama, came in contact with the defendants in the furniture store between 8:30 and 9:00 A.M., July 7, 1970, at which time they came into the store through an open door located in the rear of the store. Other employees were in the store at the time. Danley Furniture Company had a disputed account with Brown. The other two defendants came with Brown, but not on business.

The manager of the furniture company was very hazy and indefinite in his testimony as to what occurred. The trial court sustained numerous objections to the manager's testimony in his efforts to tell what happened. Brown in some way aroused the ire of the manager who told the three to get out of the store or he would call the police. The manager testified that one of the defendants, he would not say which, said to go ahead and call the police, that "they would take care of them, too." Someone in the store did call the police.

Lieutenant Jack Smith, a Dothan police officer, responded to the call after being directed to do so by the desk sergeant. He got to the scene immediately after the defendants left the store and while they were in their automobile in an alley which led to the street. Being assured by someone in the store that the three in the automobile were the persons who had been in the store, the officer caught up with the retreating vehicle bearing the defendants and ordered them to pull over, which they did. The officer did not have a warrant for their arrest nor did he have a search warrant. He knew of the oral complaint that the manager made to the police office. The store manager later took out a city warrant for the arrest of the defendants, but not at the time the defendants were stopped and detained by the police officers, including Officer Halstead, who was patrolling on a motorcycle when Officer Smith beckoned him to the stopped automobile.

Lieutenant Smith testified that when he first saw the defendants, they were coming

from an alley into the street. He testified that he did not know "exactly" who they were and that he had never seem them before; that he did not have a warrant for their arrest; that they had not committed any misdemeanor in his presence; neither had they committed a felony at that time. He and Officer Halstead escorted them to the police station, but not, so Officer Smith testified, under arrest. The officers directed the defendant to follow them; one police vehicle was ahead and the other behind the automobile in which the defendants were riding.

It appears from Officer Smith's testimony on voir dire examination by defendants that he requested Brown, who was driving the automobile bearing the defendants, to show him his driver's license. Brown obeyed. Witness further testified that he saw Shipman shift some cellophane packages from one of his hands to the other and then conceal them in his boot top. The witness responded to questions as follows:

"Q. All right. Had you searched the defendants before you took them to the police station?

"A. No, sir.

. . . . . .

"A. The question was did I search them?

"Q. Yes?

"A. No sir.

"Q. Did anyone search them in your presence?

"A. Only to the extent that Officer Halstead reached into the boottop of Thearon Shipman and removed a package, cellophane wrappers, containing a white substance, which were held together with a rubber band.

. . . . . .

"Q. All right. You say he reached into their boottops?

"A. Yes, sir. I asked him to.

"Q. And to do that, did he have to raise his trouser legs? He made a search of him, did he not?

"A. Yes, sir. The powder was concealed, but I saw him conceal it. I knew they were there.

"Q. Did you know what was in the package?

"A. No, sir, I didn't.

. . . . . .

"Q. What side of the car were you standing on?

"A. The driver's side.

"Q. All right.

"A. I had asked the driver for his driver's license.

"Q. At that time, did you place him under arrest?

"A. No, sir.

"Q. Did you place him under arrest before Mr. Halstead made the search?

"A. No, sir.

"Q. Did he have a search warrant?

"A. No, sir."

On voir dire by the State the following occurred:

"Q. Could you tell what was in the cellophane papers that he had—what did it appear to be to you?

"A. Well, it appeared to be some white substance, and I had reason to believe it wasn't headache powder."

The powders were delivered to a state toxicologist who reported that they were heroin; also the toxicologist appeared in court at trial and gave like testimony. Following the report, Officer Smith took out a felony warrant for the defendants who were subsequently removed

by him from the city jail to the county jail for confinement. The witness testified that he never did arrest the defendants until the following day when he took out a felony warrant for them. That was after the toxicologist's report was received.

■ There is no evidence in the record that either of the defendants, Brown or Davis, as distinguished from Shipman, had actual or constructive possession of the powders which the officers seized; nor is there evidence from which a lawful inference could be drawn that the two defendants, or either of them, had such possession. Nor does it appear that either aided or abetted such possession. Neither made an incriminating statement and neither attempted to flee or leave the scene. We think our pronouncement in Parks v. State, 46 Ala.App. 722, 248 So.2d 761(7), has application here. The defendant was convicted for unlawful possession of narcotics being transported in an automobile in which defendant was a passenger. We observed as follows:

"The proof introduced by the state showed that the accused was a passenger sitting on the right side of the front seat of an automobile being driven by another. The police testified they stopped the automobile because, 'The vehicle was driving all over the road.' The driver was placed under arrest for driving while intoxicated. There was no evidence of any incriminating statement by the accused, nor evidence of attempted flight after the detectives determined that the automobile contained narcotics. In our opinion, mere presence of a defendant in an automobile is not sufficient to establish the requisite knowledge of the presence of the drugs or to prove defendant guilty of aiding and abetting in the illegal possession. The defendant was entitled to have granted his motion to exclude the state's evidence. . . ."

■ The next question is whether the officers were lawfully authorized to search the person of defendant Shipman as they did, and seize the heroin or powders concealed in his boot top after observing the defendant effect such concealment. Officer Smith, as above noted, had no knowledge of any misdemeanor committed by defendants, or either of them, in his presence, or cause to believe that defendants had committed a felony. Dennis v. State, 40 Ala.App. 182, 111 So.2d 21 (H.9); Tit. 15, § 154, Code of Alabama, 1940. Officer Smith testified, supra, that he did not know what was in the package. He did not qualify as an expert in detecting heroin. The officers had neither a warrant for arrest of either defendant nor did they have a search warrant. Under such circumstances, they were not authorized to make an arrest or to search the person of the defendant Shipman. There is no evidence which would authorize a search under Tit. 15, § 118(1)(2), 1966 Ex.Sess. 183(1)(2).

We think the Court's observation in Eaton v. State, 45 Ala.App. 464, 231 So.2d 918 (H. 1–3) has application here. We quote:

"In determining whether there is probable cause to search, the law does not permit us to consider the fruits of the search. Admittedly, the other facts known to Agent Hadden might arouse his suspicion, but suspicion alone will not justify a search. From the record before us, we conclude that Agent Hadden did not have probable cause to search the trunk of appellant's automobile."

Defendant's action in concealing the heroin might have and probably did arouse Officer Smith's suspicion, but suspicion alone will not justify a search. In the absence of proof of Officer Smith's qualifications vel non as an expert in detecting heroin, we cannot resort to speculation to make up for the lack of probable cause. Dennis, supra; McCurdy v. State, 42 Ala. App. 646, 176 So.2d 53, cert. denied 278 Ala. 710, 176 So.2d 57. The search was illegal and contrary to defendant's constitutional rights. Amendment IV, Constitution

of the United States, Article 1, § 5, Constitution of Alabama.

The trial court should have either suppressed the evidence or directed the jury at the end of the trial to acquit all three defendants. Refusal was error.

The judgment of guilt as to each defendant is reversed and the cause remanded.

Reversed and remanded.

CATES, P. J., and ALMON, TYSON and HARRIS, JJ., concur.

DeCARLO, J., dissents.

DeCARLO, Judge (dissenting):

I cannot join in the reversal of this case in its entirety. I do agree with the holding as to the two companions, but respectfully differ as to the appellant Shipman.

My reasoning is that probable cause existed for Lt. Smith to stop the car. He had before him these articulable facts: a radio dispatch from Police Headquarters, personal knowledge that warrants would be obtained, identification of the car and its occupants. Even though all the facts taken together at this point would not justify an arrest or search, the officer had sufficient information to warrant stopping the automobile for investigation. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

Effective crime prevention and detection dictate that a police officer, under appropriate circumstances and in an appropriate manner, should approach a person for purposes of investigating possible criminal behaviour, even though there is no probable cause to arrest. Terry, supra.

Lt. Smith had stopped the car and was speaking to the driver when he observed appellant pass cellophane packages held with a rubber band from one hand to another, then to his boot top. He testified that the packages contained white powder similar to headache powder.

Items in plain view of a law enforcement officer who has a legitimate right to be in the position he is to have that view are not discovered as a result of a search. United States v. Lowry, 5 Cir., 456 F.2d 341.

In view of appellant's unusual conduct, it was not unreasonable for this officer to order them out of the car. When Lt. Smith first approached the vehicle, he saw the appellant's furtive actions and had reasonable grounds to believe he was hiding contraband.

"It is a natural impulse on confrontation to hide immediately any contraband, and one cannot be heard to complain that he, or a companion, has betrayed the presence of illegal goods by the alacrity with which he attempted to conceal them."

People v. Jiminez, 143 Cal.App.2d 671, 300 P.2d 68, People v. Goodrick, 11 Cal.App.3d 216, 89 Cal.Rptr. 866.

Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be some authority permitting seizure where the officer has reason to believe that the furtive movements of an individual he is confronting suggests concealment of contraband, regardless of whether he had probable cause to arrest the individual initially. The officer need not be absolutely certain that the attempted concealment is contraband. The crux of this question should be when a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that the person he is facing has committed a crime or is committing a crime, the seizure is justified.