# Shields v. The State.

*Prosecution for Carrying Concealed Weapons.*

1. *Evidence obtained by illegal search, admissible.*—Evidence obtained by a search, which was illegal and unauthorized, is admissible to fix the guilt of a criminal offense upon the person searched; and the admission of such evidence so obtained is not violative of the constitutional guaranty that a person accused shall not be compelled to give evidence against himself, or of the further guaranty "that the people shall be secure in their persons, homes, papers, and possessions from unreasonable seizures or searches."

2. *Same; carrying concealed weapons.*—On a trial for carrying concealed weapons, where it is shown that a pistol was found concealed on defendant's person as the result of a forcible search by an officer, the evidence of the discovery of the pistol concealed about his person is admissible against the defendant, although the search was unauthorized and unlawful.

3. *Sheriff's right to search persons desiring to visit the jail.*—While a sheriff, as jailor, may require whoever seeks to visit prisoners in the jail to submit their persons to a proper and orderly search, he can not, if such persons do not consent thereto, compel them by force to submit to a search of their persons, even though he may suspect them of crime or criminal purposes.

4. *Charge of the court to the jury; effect of the evidence.*—In a criminal case, a charge to the jury that, "If they believe the evidence, they must find the defendant guilty," is erroneous, in not requiring the belief of the evidence to the exclusion of all reasonable doubt.

APPEAL from the County Court of Wilcox.

Tried before the Hon. J. T. Beck.

The defendant was prosecuted under a complaint

charging him with the offense of carrying a pistol con-
cealed about his person, and was convicted therefor. On
the trial of the case, as is shown by the bill of exceptions,
the State introduced as a witness M. E. Curtis, sheriff of
Wilcox county, who testified that the defendant, with
two others, came to the jail of Wilcox county, and asked
to be allowed to see a cousin, who was then a prisoner
confined in said jail; that said Curtis told them that they
could not go into the prison part of the jail until he had
searched them; that one of the party was searched, and
that when the defendant halted, the witness Curtis re-
marked : "If you wish to go in come on ; and if you do
not wish to go, then go out;" that the defendant then
started to go into the prison part of the jail, and that
thereupon the sheriff took hold of him, and, against his
consent, searched him, and found a pistol concealed
about his person. The defendant objected to this testi-
mony, and moved to exclude it, on the grounds : 1st,
that the sheriff had no right or authority to search him ;
2d, because the searching of defendant's person, and
finding the pistol concealed by the said sheriff, was with-
out his consent or permission, and, therefore, the testi-
mony relating thereto is inadmissible. The court over-
ruled the objection and motion of the defendant, and to
this ruling the defendant duly excepted.

The defendant testifying in his own behalf stated that
the pistol which was found upon his person was a broken
pistol, which he was carrying to the gun-smith to be re-
paired, and that the said sheriff searched him against
his consent. Upon the introduction of all the evidence
the court charged the jury that "If they believe the evi-
dence they must find the defendant guilty." The de-
fendant duly excepted to the giving of this charge.

PETER M. HORN, for appellant.

WM. L. MARTIN, Attorney-General, and VIRGINIUS W.
JONES, for the State.—The court did not err in admitting
the evidence of M. E. Curtis, the sheriff.—*Spicer v. State*,
69 Ala. 159, and authorities cited; *Chastang v. State*, 83
Ala. 29 ; *Terry v. State*, 90 Ala. 635 ; *Scott v. State*, 94
Ala. 80 ; *Sewell v. State*, 99 Ala. 183.

BRICKELL, C. J.—The proposition underlying the

objections to the admissibility of the evidence of the dis-
covery of the pistol concealed about the person of the de-
fendant, and which is pressed in the argument of coun-
sel, is, that the search was unauthorized and illegal;
and as it was unauthorized and illegal the admission of
evidence obtained by it, to fix the guilt of a crimi-
nal offense upon the person searched, is viola-
tive of the constitutional guaranty, that the accused
shall not be compelled to give evidence against himself;
and of the further guaranty, "that the people shall be
secure in their persons, homes, papers and possessions,
from unreasonable seizure or searches," &c. Kindred
propositions in varying forms, and under varying facts,
have been drawn to the attention and consideration of
this court.—*Chastang v. State*, 83 Ala. 29; *Terry v. State*,
90 Ala. 635; *Scott v. State*, 94 Ala. 80; *French v. State*,
*Ib.* 93; *Sewell v. State*, 99 Ala. 183. In neither of these
cases was the search, or the mode in which the evidence
was obtained, deemed illegal. In *Terry v. State*, 90 Ala. 635,
which like the case before us, was an indictment for the
offense of carrying concealed weapons, the court ob-
served : "We need not say what would be our ruling, if
the pistol had been discovered by the officer in a search
of the defendant's person, or if the defendant had sur-
rendered the pistol in obedience to the command of the
officer having him in charge. The question is not pre-
sented, and we leave it undecided." In the later case, *Sew-
ell v. State*, 99 Ala. 183, a like indictment, the court said :
"We presume the objection" (to the admissibility of the
evidence) "is based upon the proposition that the dis-
covery of the guilt was brought about by the unlawful
exercise of official authority and power on the part of
the constable, and that it would be against public poli-
cy, if not an invasion of the constitutional immunity of
the citizen, to suffer information so obtained to be used
against the defendant. This case does not call for any
decision on that subject, and we declare no rule touching
the admissibility of evidence so obtained."

If, as is insisted, the search of the person of the de-
fendant was unauthorized and illegal, the question, a de-
cision of which was heretofore pretermitted, is now un-
avoidable; and that it was unauthorized and illegal, we
cannot doubt.

The sheriff is the jailor, having the legal custody and

charge of the county jail, and of the prisoners therein confined. He may commit the custody and charge to a jailor of his appointment, who becomes his deputy or substitute, for whose acts he is civilly responsible.—Cr. Code, § 4535. Charged with the duty of protecting and preserving the jail, and of keeping the prisoners safely, until of their custody he is relieved by legal authority, of necessity, the jailor, whether he be the sheriff, or a substitute of his appointment, has a large discretion, in determining at what time, under what circumstances, and what persons, not having legal authority, he will permit to enter the jail, or to have access to the prisoners; a discretion it is not contemplated he will exercise arbitrarily or capriciously, but which at last he must exercise according to his own conscience and judgment, uncontrolled by the conscience and judgment of others. If he apprehends injury to the jail, or the introduction therein of things forbidden, or the instrumentalities of escape, or detriment to a prisoner, he may require whoever may seek admission into the jail, to submit their persons to a proper, orderly examination or search. The examination or search must be voluntary on the part of such persons. If they do not consent, admission to the jail, or access to the prisoners, may be refused; if they have entered, they may be required to depart. If they persist in remaining, they may be treated as trespassers and ejected, the jailor using no more force than is necessary to eject them. But he is without legal authority by force to search or examine them; or to compel them to submit their persons to search or examination, even though he may suspect them of crime, or of criminal purposes. If by force, he makes search of their persons, or compels them to submit to it, he becomes a trespasser, and for the wrong is civilly answerable; and he commits an indictable misdemeanor, the offense being aggravated because of his official relation, and the abuse of its rightful powers.

While it is true, the search of the defendant was without legal justification, a trespass, and an indictable misdemeanor, we know of no principle or theory, upon which the State may be deprived of the right to employ the evidence of a criminal offense thus obtained. As is observed by the Supreme Court of Illinois, in *Gindrat v. People*, 138 Ill. 111: "Courts, in the administration of

the criminal law, are not accustomed to be over-sensitive
in regard to the sources from which evidence comes, and
will avail themselves of all evidence that is competent
and pertinent, and not subversive of some constitutional
or legal right.'' The State had no connection with, and
had no agency in the wrong committed by the sheriff.
The law appoints the remedy for the redress of the
wrong, but the exclusion of the evidence criminating
the defendant, is not within the scope of the remedy,
or the measure of redress. Evidence is not infrequent-
ly obtained by methods which are reprehensible in good
morals, offensive to fair dealing, subjecting it to unfa-
vorable inferences, the party relying upon it must neu-
tralize, to entitle it to full credence. And evidence is
sometimes obtained under circumstances which meet
with the unqualified disapprobation of the courts. The
evidence, however unfairly and illegally obtained, is not
subject to exclusion, if it be of facts in themseves rele-
vant, except when a party accused of crime has been
compelled to do some positive, affirmative act inculpat-
ing himself; or an admission or confession has been ex-
torted from him by force, or drawn from him by appli-
ances to his hopes or fears.—1 Greenl. Ev., § 254 a;
*Commonwealth v. Dana*, 2 Metc. (Mass.) 329–37; *State
v. Flynn*, 36 N. H. 64; *Gindrat v. People*, 138 Ill. 111.

The extra-judicial confessions or admissions of a de-
fendant, charged with crime, are received in evidence
with a degree of caution, not extended to any other
species of evidence. Before admitting them, the court
must be satisfied that they were made voluntarily, free
from compulsion, or appliances of hope or fear to the
mind of the accused. Yet, if a confession or admission
be made involuntarily, under circumstances which com-
pel its exclusion as evidence, and from it a knowledge
of material, relevant facts is derived, these facts are ad-
missible evidence.—1 Greenl. Ev., § 231; *Brister v. State*,
26 Ala. 107; *Sampson v. State*, 54 Ala. 241. Confes-
sions obtained by artifice or deception, or falsehood,
however reprehensible and dishonorable, if voluntary,
are also admissible evidence.—Wharton Cr. Ev., § 670;
1 Roscoe Cr. Ev., (8th Ed.), 81; *King v. State*, 40 Ala.
314; *People v. Barker*, 60 Mich. 277, s. c. 1 Am. St. Rep.
501; *Heldt v. State*, 20 Neb. 492, s. c. 57 Am. Rep. 835.
The evidence of an eavesdropper as to statements made

by the defendant, when he was free from all influences affecting the admissibility of such statements, has been received. The court said : "The defendant has no cause of complaint, either because, if an eavesdropper, the witness may possibly not have heard all that was said in the conversation to which he testified, or on the ground that eavesdropping is disreputable in itself, or was an offense at common law."—*People v. Cotta*, 49 Cal. 166. The evidence of detectives feigning to be accomplices, obtaining and practicing upon the confidence of the accused, is received ; and so is the evidence of spies; the manner of obtaining the evidence is directed to its credibility, not to its admissibility.—*State v. McKean*, 36 Iowa 343 ; *Wright v. State*, 7 Tex. App. 574 ; *People v. Barker*, 60 Mich. 277, s. c. 1 Am. St. Rep. 501; *Gindrat v. People*, 138 Ill. 111. In the latter case, the evidence was obtained by an unlawful intrusion by a detective into and search of the dwelling place of the defendant.

The guaranty of the constitution, that no person accused of crime shall be compelled to give evidence against himself, corresponds to and is drawn from the maxim of the common law, *"Nemo tenetur seipsum accusare,"* and it forever removes from the sphere of judicial investigations any and all compulsion of persons accused of crime, either by subjecting them to physical torture, or to inquisitorial examinations, to which they have been subjected in some countries.—2 Story Const., § 1788. Admissions or confessions imputed to them are inadmissible as evidence, except under the limitations and conditions to which we have referred. It is, as we have seen, of the very essence of their admissibility, that they should be voluntary, proceeding from the unrestrained volition of the accused. The defendant made no admission or confession ; he was passive, the unresisting victim of unlawful violence ; and if he had made an admission or confession, its exclusion because not free and voluntary, would have been unavoidable. It is not that which he has said or done, which is supposed to offend the constitutional guaranty, but the independent, unlawful acts of the sheriff, by and through which it was discovered that he bore upon his person the "mute witness" of a criminal offense. We quote with approbation from the opinion of the Supreme Court of New Hampshire, in *State v. Flynn*, 36 N. H. 64 : "It seems to us an

unfounded idea that the discoveries made by the officers and their assistants, in the execution of process, whether legal or illegal, or where they intrude upon a man's privacy without any legal warrant, are of the nature of admissions made under duress, or that it is evidence furnished by the party himself upon compulsion. The information thus acquired is not the admission of the party, nor evidence given by him, in any sense. The party has in his power certain mute witnesses, as they may be called, which he endeavors to keep out of sight, so that they may not disclose the facts which he is desirous to conceal. By force or fraud access is gained to them, and they are examined, to see what evidence they bear. That evidence is their's, not their owner's. If a party should have the power to keep out of sight, or out of reach, persons who can give evidence of facts he desires to suppress, and he attempts to do that, but is defeated by force or cunning, the testimony given by such witnesses is not his testimony, nor evidence which he has been compelled to furnish against himself. It is their own. It does not seem to us possible to establish a sound distinction between that case, and the case of the counterfeit bills, the forger's implements, the false keys, or the like, which have been obtained by similar means. The evidence is in no sense his.''

The case of *Commonwealth v. Dana*, 2 Metc. (Mass.) 329, was of the seizure of lottery tickets illegally kept for sale. The seizure was made under a search warrant asserted to be illegal and void. The court sustained the validity of the warrant, but in answer to the objections proceeding on the invalidity of the warrant, and the consequent illegality of the search, said : ''Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done ; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully ; nor would they form a collateral issue to determine that question. This point was de-

cided in the cases of *Legatt v. Tollervey*, 14 East. 302, and *Jordan v. Lewis*, 14 East. 304, note; and we are entirely satisfied that the principle on which these cases were decided is sound and well established."

We adhere to the proposition to be extracted from the authorities to which we have referred, that, however unfair or illegal may be the methods by which evidence may be obtained in a criminal case, if relevant, it is admissible, if the accused is not compelled to do any act which criminates himself, or a confession or admission is not extorted from him, or drawn from him by appliances to his hopes or fears. The objections to the admissibility of the evidence were properly overruled.

The instruction given the jury is erroneous. I doubt the propriety of such an instruction in any criminal case, whether it be of felony or misdemeanor. There can be but little of necessity for it, and it seems to me, the better practice is for the court to state the law, leaving the effect of the evidence wholly to the consideration and determination of the jury. Such instructions have, however, received the approval of this court, and I yield to precedent, whatever of doubt I may have as to their propriety. If such an instruction be given, it must not be expressed in the terms which would be appropriate in a civil case. A preponderance of evidence, though it may not leave the minds of the jury free from reasonable doubt, requires a verdict in a civil case. But in criminal cases, there must be the exclusion of all reasonable doubt, to authorize a conviction. "Neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generate full belief of the fact, to the exclusion of all reasonable doubt."—3 Greenl. Ev., § 29. This marked difference between the *quantity* of evidence which will support a verdict in civil and criminal cases, must be observed in instructing the jury. The evidence may have been believed, and yet it may not have excluded from the minds of the jury all reasonable doubt. As was said by Stone, C. J., in *Rhea v. State*, 100 Ala. 119: "Believing from the testimony that the facts exist is not enough. The belief must be so strong as to leave no reasonable doubt of its truth." See also *Pierson v. State*, 99 Ala. 148; *Heath v. State*, 99 Ala. 179.

For the error in this instruction, the judgment must

[Carr v. The State.]

be reversed and the cause remanded ; the defendant will remain in custody until discharged by due course of law. .

Reversed and remanded.