167 So.2d 281

**Ruth BROWN**

v.

**STATE.**

**7 Div. 739.**

Court of Appeals of Alabama.

April 7, 1964.

Rehearing Denied April 29, 1964.

Loma B. Beaty, Fort Payne, for appellant.

Richmond M. Flowers, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

CATES, Judge.

One of the judges having so moved, this cause is restored to the docket, the original opinion is vacated and the cause stands now as newly submitted.

On further consideration, the opinion of the court is as follows:

Mrs. Brown appeals from a conviction of possessing a prohibited alcoholic beverage. Code 1940, T. 29, § 98. The punishment was a fine of $50.00.

Virgil H. Brown and M. G. Richards, deputies of the sheriff of DeKalb County, went to Mrs. Brown's home. This was about a fourth of a mile "from Fisher's Crossroads Store on Lookout Mountain."

There these officers found "one-half pint of untaxed whiskey in the kitchen cabinet" cached in an empty flour bin.

Mr. Richards, on cross-examination, testified in part:

"Q. Was there anyone else in this house?

"A. Yes sir, Winford Bailey.

"Q. What was his condition?

"A. He stayed on the couch.

"Q. What was his condition?

"A. He had alcoholic beverages on his breath.

"Q. What was Mrs. Brown's condition?

"A. I didn't notice.

"Q. She didn't have anything to drink?

"A. I don't think so.

"Q. Was this bottle full that you allegedly found?

"A. No sir.

"Q. Some had been used out of it?

"A. Yes sir.

"Q. And you didn't find any evidence that this lady had been drinking?

"A. No sir.

* * * * *

"Q. Did you charge the person with violating the prohibition law?

"A. Neither of them would claim it so we had to charge it to one of them.

* * * * *

"Q. Was Winford Bailey the person you arrested on this day for intoxication?

"A. Yes sir.

"Q. Did you find the bottle that Mr. Bailey had been drinking out of?

"A. No sir.

"Q. So far as you know this bottle was the one Mr. Bailey had been drinking out of? This bottle that you allegedly found?

"A. I wouldn't say.

"Q. But there had been some gone out of it?

"A. Yes sir.

"Q. How did you search this house? Did Mr. Butler search any of the house?

"A. Front room and kitchen. He found that while I was in the other room.

"Q. And you don't know how many trips he made in conducting this search?

"A. No sir, I don't know."

The two deputies searched Mrs. Brown's home, purporting to be armed with a warrant. This warrant is based on the form in Code 1940, T. 15, § 105. Code 1940, T. 29, §§ 210–214 and 220 also provide for search warrants in liquor cases.

Section 212, supra (of the liquor laws), provides:

"§ 212.—Said warrants may be issued only on probable cause supported by affidavit naming or describing the person or other party whose premises are to be searched, if known, and describing as near as possible the liquors and beverages to be searched for and the place to be searched, but the liquors or beverages may be described as prohibited liquors and beverages or spirituous, vinous, or malt liquors if more specific description be not obtainable, and the affidavit may show that more specific description is not obtainable."

Code 1940, T. 15, § 102, provides:

"§ 102.—A search warrant can only be issued on probable cause, supported by affidavit, naming or describing the person, and particularly describing the property, and the place to be searched."

The affidavit is in conclusory form and asserts the positive personal knowledge of the affiant both as to the possession and its purpose:

"Before me, W. J. Chitwood, Judge of the DeKalb County Inferior Court of said County and State, personally appeared M. G. Richards who, being by me duly sworn, deposed and says that Ruth Brown has spiritous, vinous or malt liquors or other prohibited liquors upon his [sic] person, in his [sic] house, barn or premises which are stored for sale, delivery or other purposes contrary to law.

/s/ M. G. Richards

"Sworn to and subscribed to before me, this 25 day of Jan., 1963

/s/ W. J. Chitwood
Judge of the DeKalb County Inferior Court."

Mr. Butler testified, on cross, as to the circumstances of origin of the warrant, in part:

"Q. Did you and any other Deputy obtain these warrants based on your own information?

"A. Only on information we had received.

"Q. What kind of information?

"A. We had received several phone calls. Anonymous calls.

"Q. You obtained these warrants on anonymous phone calls?

"A. Yes, some people who identified themselves as residents.

"Q. Did you recognize these voices.

"A. No sir.

"Q. Were any of them male voices? Do you know Luke Thompson?

"A. No sir.

"Q. Do you know if any of these calls were from Luke Thompson?

"A. No sir.

\* \* \* \* \* \*

"Q. I asked you, Mr. Butler, if this anonymous caller stated that there would be whiskey at the residence if you went there?

"A. Yes, and a wild party.

"Q. What kind of statement?

"A. They said that they had whiskey at Ruth Brown's place and that they were drinking and carousing at her house.

"Q. But you didn't know who made the call?

"A. No. sir."

Taken on voir dire, Mr. Richards also testified:

"Q. What basis did you obtain this warrant on?

"A. You mean the reason I got it?

"Q. Yes sir.

"A. We have been having several complaints.

"Q. Who from?

"A. I couldn't tell you that?

"Q. You couldn't testify who you received these complaints from?

"A. No sir.
"Q. No one who complained to you gave their name?

"A. No sir.

"Q. And no one had complained to you giving you specific basis to get this warrant?

"A. No sir.

"Q. And you hadn't previously talked with anyone about this warrant?

"A. Not particularly

"Q. While testifying about the warrant dated January 25, 1963, did you go before Judge Chitwood and swear to him that you had proper information to obtain this warrant?

"A. Yes sir.

"Q. What information did you give?

"A. I said we had some complaints.

"Q. And you didn't give him any written testimony to support this warrant? And the fact is you just told him you wanted him to give you this search warrant and away you went?

"Q. He filled it out.

"Q. Did anything other than that happen?

"A. No sir.

"Q. You told him and he just filled it in?

"A. No, I told him we had complaints.

"Q. And then he filled it out and then what happened?

"A. I signed it and we served it.

"Q. He turned it over to you and he put his name on it before you signed it?

"A. I don't recall."

The affidavit and search warrant fail to disclose, under the most minute scrutiny, that the proceedings before the issuing magistrate were supported by other than hearsay.

This controversy is not new. Cardozo, J., posed it as whether the prosecution should suffer for the constable's blunder.

In June, 1921, Bricken, P. J., wrote for the court in Banks v. State, 18 Ala.App. 376, 93 So. 293, 24 A.L.R. 1359, saying, with reference to Constitution 1901, § 5:

" * * * The right sought to be maintained, preserved, and enforced by this constitutional guaranty is one that relates to a fundamental principle of government, for the supreme purpose actuating mankind in the organization of society was the preservation of life, liberty and property. The end sought to be obtained by this constitutional provision was to prevent all unlawful invasions of the sanctity of the home and the privacies of life. The right protected is the indefeasible right of personal security and personal liberty, and traces its existence to that concession of Magna Charta obtained on the battlefield of Runnymede by English freemen from John, their king, on the 15th day of June, 1215, and which guaranteed:

" 'No freeman may be taken, or imprisoned, or detained, or outlawed, or banished, or in any way destroyed, nor will we go against him, or send against him, except by the lawful judgment of his peers, or by the law of the land. To none will we sell or deny or delay right or justice.'

\* \* \* \* \* \*

"Concisely stated, the conclusion reached in the Shields Case [104 Ala. 35, 16 So. 85] is that evidence obtained through and by means of a plain violation of a constitutional prohibition is admissible, if said evidence is relevant to the issue of the case on trial. In other words, a rule of evidence, or of procedure, is declared by the Shields Case to be paramount to the Constitution itself. \* \* \*

\* \* \* \* \* \*

"The principle, therefore, that prevents the introduction of testimony obtained through a violation of the Constitution is that the Constitution itself prohibits the obtaining of evidence in this manner. There can be no higher authority for the exclusion of such evidence than the Constitution. The Constitution of Alabama is the supreme law of this state. To it all statutes, rules of evidence, rules of procedure, courts in the exercise of their power and authority, officials acting under the color of their office, as well as individuals, must pay their respect and obedience. It is the *supreme law,* and to it all rules of evidence, procedure, and expediency, in conflict with its mandates and prohibitions, must yield. \* \* \*

\* \* \* \* \* \*

" \* \* \* To say that a sheriff of this state may invade the privacy of the home of one of its citizens, without search warrant or other legal process, and thus procure testimony that may be used to secure the conviction to such citizen of a criminal offense, would be to affirm and sanction, by judicial decision, an open defiance of the prohibitions of the Constitution designed and promulgated for the protection of each and every citizen of the state against such unauthorized, illegal, and outrageous action. If one constitutional provision may be nullified in this manner, then why not all? To indorse, countenance, and sanction the invasion of the home of a citizen of this state by a sheriff of this state without proper process is in its last analysis to indorse anarchy and revolution.

"For the reasons set forth, it is the unanimous opinion of the Court of Appeals that the case of Shields v. State, 104 Ala. 35, 16 South. 85, 53 Am.St. Rep. 17, and all cases following it, should be overruled and held for naught in so far as said cases may vitalize and give effect to a plain violation of the prohibitions against unreasonable searches \* \* \*."

In June, 1961, Clark, J., in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, writes:

"Some five years after Wolf [Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782], in answer to a plea made here Term after Term that we overturn its doctrine on applicability of the Weeks [Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652] exclusionary rule, this Court indicated that such should not be done until the States had 'adequate opportunity to adopt or reject the [Weeks] rule.' Irvine v. [People of State of] California, supra 347 U.S. [128] at 134 [74 S.Ct. 381 at 384, 98 L.Ed. 561]. There again it was said:

" 'Never until June of 1949 did this Court hold the basic search-and-seizure prohibition in any way applicable to the states under the Fourteenth Amendment.' Ibid.

\* \* \* \* \* \*

"* * * We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."

Here we note two aspects of review procedure. *First,* is review of the proceedings leading to issuance of the search warrant too late if no protest is made to the issuing magistrate by way of quashal of the return? *Second,* is a pretrial motion to suppress the exclusive way to enforce the evidentiary rule of Mapp v. Ohio?

Under the State's own evidence here—disclosing the invalidity of the affidavit, warrant and search—both of these questions are to be for this case answered, "No."

We consider that the judgment herein is due to be reversed because of (1) a violation of Mapp v. Ohio, supra, and (2) a violation of the statutory limitations on the issuance of a search warrant of a private dwelling under Code 1940, T. 29, § 210 et seq.

Under the federal cases, the issuance of a search warrant based on hearsay information furnished by an *anonymous* informer is alone not sufficient reasonable probable cause within the Fourth Amendment of the United States Constitution to justify search or seizure. Anno. 14 A.L.R. 2d 605.

Inasmuch as Mapp v. Ohio brings the Fourth Amendment to bear upon state trials, it would seem that the minimum degree of proof established under the Fourth Amendment would necessarily be the minimum for the issuance of a state search warrant.

Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, states:

"Preliminary to our examination of the search and seizures involved here, it might be helpful for us to indicate what was not decided in Mapp. First, * * * Mapp, however, established no assumption by this Court of supervisory authority over state courts, cf.

Cleary v. Bolger, 371 U.S. 392, 401, 83 S.Ct. 385, 390, 9 L.Ed.2d 390 (1963), and, consequently, it implied no total obliteration of state laws relating to arrests and searches in favor of federal law. * * * Second, Mapp did not attempt the impossible task of laying down a 'fixed formula' for the application in specific cases of the constitutional prohibition against unreasonable searches and seizures; it recognized that we would be 'met with "recurring questions of the reasonableness of searches,"' and that, 'at any rate, "[r]easonableness is in the first instance for the [trial court] to determine,"' id., 367 U.S., at 653, 81 S.Ct. [1684] at 1690, 6 L.Ed.2d 1081, * * * thus indicating that the usual weight be given to findings of trial courts.

"Mapp, of course, did not lend itself to a detailed explication of standards, since the search involved there was clearly unreasonable and bore no stamp of legality even from the Ohio Supreme Court. * * *

* * * * * *

"This Court's long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application is carried forward when that Amendment's proscriptions are enforced against the States through the Fourteenth Amendment. And, although the standard of reasonableness is the same under the Fourth and Fourteenth Amendments, the demands of our federal system compel us to distinguish between evidence held inadmissible because of our supervisory powers over federal courts and that *held inadmissible because prohibited by the United States Constitution.* We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the

'fundamental criteria' laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees. As we have stated above and in other cases involving federal constitutional rights, findings of state courts are by no means insulated against examination here. * * * While this Court does not sit as in *nisi prius* to appraise contradictory factual questions, it will, where necessary to the determination of constitutional rights, make an independent examination of the facts, the findings, and the record so that it can determine for itself whether in the decision as to reasonableness the fundamental—i. e., constitutional—criteria established by this Court have been respected. The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Such a standard implies no derogation of uniformity in applying federal constitutional guarantees but is only a recognition that conditions and circumstances vary just as to investigative and enforcement techniques."

Even without the Fourth Amendment rule of exclusion, our statutory law, § 210, supra, as amended, provides in part:

"* * * No evidence obtained by means of an illegal search of the private dwelling of any person shall be admissible in any court in the prosecution of any person for violating any of the provisions of this title.

A search is deemed illegal unless, (1) a valid search warrant has been issued in full compliance with law, including section 214 of this title, and such warrant is executed according to law."

See prohibited liquor cases, e. g., Green v. State, 38 Ala.App. 189, 79 So.2d 555; Porch v. State, 38 Ala.App. 565, 89 So.2d 694; Weldon v. State, 39 Ala.App. 286, 97 So.2d 825; Dennis v. State, 40 Ala.App. 182, 111 So.2d 21; Thompson v. State, 41 Ala.App. 353, 132 So.2d 386; Beam v. State, 41 Ala.App. 401, 137 So.2d 762; and Lawson v. State, 42 Ala.App. 172, 157 So.2d 226. Also Moore v. State, 41 Ala. App. 657, 146 So.2d 734, and Phillips v. State, 42 Ala.App. 64, 152 So.2d 148.

A motion to suppress the evidence so as to forbid use of the fruit of an illegal search in a criminal trial is ordinarily the proper remedy available to a defendant. The writer digressed in Thompson v. State, supra, in a separate concurring opinion in Beam v. State, supra, and in Willis v. State, 42 Ala.App. 85, 152 So.2d 883, to indicate his views of the do's and don't's about the motion to suppress characterized by Judge Harwood as a stranger to our jurisprudence before § 210, supra, was amended.

This case corresponds to Lawson v. State, supra, in that there is no dispute of fact which gives only a legal question of admissibility.

State v. Robbins, 37 Wash.2d 431, 224 P.2d 345, gives two exceptions for excusing a pretrial motion to suppress: *First,* where, without dispute, as in the case of Lawson, supra, the objects or papers are unlawfully seized; and, *second,* where "by the exercise of reasonable diligence, [the defendant] could not before [trial] have learned that the articles were unlawfully seized."

In United States Fidelity & Guaranty Co. v. Miller, 235 Ala. 340, 179 So. 239, Mr.

Justice Bouldin alluded to the evidence, the case being one for malicious prosecution, as follows:

"* * * Three women, 'reputable, good people,' * * * came to [the Mayor] of the city of Cullman, and complained to him and chief of police, * * * that bootlegging was going on in the neighborhood * * * outside the corporate limits but within the police jurisdiction * * * begged the officers to put a stop to it, and gave the names of * * * as the persons whose premises should be raided.

"The mayor, after hearing the complaints, sent the chief of police to the sheriff's office with instructions to have a search warrant issued * * *

"The chief of police went to the sheriff, informed him of the reports, gave the names of the women, and of the persons whose premises should be searched.

"Thereupon the sheriff swore out the search warrants * * *."

In holding that this evidence failed to carry the burden of showing that the sheriff acted with malice within the meaning of a civil action, the opinion states:

"* * * The law casts upon sheriffs much responsibility in the enforcement of the prohibition statutes. That he acted promptly upon advice of fellow officers, also charged with a duty in the premises, especially a mayor with full authority to consider the matter of probable cause, without awaiting a personal investigation, does not negative probable cause nor warrant any inference of malice on the part of the sheriff."

This, we believe, marks the outer limit of supporting issuance of a warrant based on information given by reputable (i. e., credible) persons. Beyond that, we cannot see that the issuing magistrate has anything before him upon which he can make a judicial determination. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697.

The landmark case of Toole v. State, 170 Ala. 41, 54 So. 195, shows that the warrant issues by a judicial act. Here the informant was anonymous not because the officer refused to disclose a valued informer, but because he honestly did not know who was on the telephone. The issuing magistrate, had he been advised, still would have no function except to determine whether or not the phone call has been truly narrated to him.

To allow such scant proof for the issuance of warrants, would give pranksters or meddlers occasion for harassment as much as occurs when a false fire alarm is given.

From Jones v. United States, supra, we quote:

"* * * was arrested in an apartment in the District of Columbia by federal narcotics officers, who were executing a warrant to search for narcotics. Those officers found narcotics, without appropriate stamps, and narcotics paraphernalia in a bird's nest in an awning just outside a window in the apartment. Another officer, stationed outside the building, had a short time before seen petitioner put his hand on the awning. Upon the discovery of the narcotics and the paraphernalia petitioner had admitted to the officers that some of these were his and that he was living in the apartment.

"Prior to trial petitioner duly moved to suppress the evidence obtained through the execution of the search warrant on the ground that the warrant had been issued without a showing of probable cause. The Government challenged petitioner's standing to make this motion because petitioner alleged neither ownership of the seized articles nor an interest in the apartment greater than that of an 'invitee

or guest.' The District Court agreed to take evidence on the issue of petitioner's standing. Only petitioner gave evidence. On direct examination he testified that the apartment belonged to a friend, Evans, who had given him the use of it, and a key, with which petitioner had admitted himself on the day of the arrest. On cross-examination petitioner testified that he had a suit and shirt at the apartment, that his home was elsewhere, that he paid nothing for the use of the apartment, that Evans had let him use it 'as a friend,' that he had slept there 'maybe a night,' and that at the time of the search Evans had been away in Philadelphia for about five days.

\* \* \* \* \* \*

"The affidavit is set out in the margin. Didone was a member of the Narcotic Squad in the District of Columbia. His affidavit claimed no direct knowledge of the presence of narcotics in the apartment. He swore that on the day before making the affidavit he had been given information, by one unnamed, that petitioner and another 'were involved in the illicit narcotic traffic' and 'kept a ready supply of heroin on hand' in the apartment. He swore that his informant claimed to have purchased narcotics at the apartment from petitioner and another 'on many occasions,' the last of which had been the day before the warrant was applied for. Didone swore that his informant 'has given information to the undersigned on previous occasion and which was correct,' that '[t]his same information' regarding petitioner had been given the narcotic squad by 'other sources of information' and that the petitioner and the other implicated by the informant had admitted being users of narcotics. On this basis Didone founded his oath that he believed 'that there is now illicit narcotic drugs being secreated [sic] in the above apartment by Cecil Jones.'.

"This affidavit was, it is claimed, insufficient to establish probable cause because it did not set forth the affiant's personal observations regarding the presence of narcotics in the apartment, but rested wholly on hearsay. We held in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159, that an affidavit does not establish probable cause which merely states the affiant's belief that there is cause to search, without stating facts upon which that belief is based. *A fortiori this is true of an affidavit which states only the belief of one not the affiant.* That is not, however, this case. The question here is whether an affidavit which sets out personal observations relating to the existence of cause to search is to be deemed insufficient by virtue of the fact that it sets out not the affiant's observations but those of another. An affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.

"In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. We there upheld an arrest without a warrant solely upon an informant's statement that the defendant was peddling narcotics, as corroborated by the fact that the informant's description of the defendant's appearance, and of where he would be on a given morning (matters in themselves totally innocuous) agreed with the officer's observations. We rejected the contention that an officer may act without a warrant only when his basis for acting would be competent evidence upon a trial to prove defendant's guilt. \* \* \*" (Italics added.)

Also, from Duniway, J., in Costello v. United States, 9 Cir., 324 F.2d 260:

"* * * Appellant relies upon language used by us in our prior opinion in this matter, (Costello v. United States, supra, 298 F.2d [99] at 101.) There we said that when a 'tip' is relied upon to establish probable cause there must be a substantial basis for crediting the hearsay or a record of accurate and reliable information, in short, a previously reliable informant. Appellant also relies upon Jones v. United States, 1960, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 where the Supreme Court said that an officer 'may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.' The Court there cited Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. In Draper the corroboration consisted in the occurrence, under the observation of the officers, of certain events which the informant had predicted, and the officers' observation of the events was held to be sufficient corroboration to warrant reliance upon the informant's tip.

* * * * * *

"Our holding is that there are at least two means by which the credibility of an informant may be established. One is by corroborating external circumstances occurring in the course of the very case that is at issue, as happened in the Draper case, supra. The other is the fact that on prior occasions in other cases the informant has given information which turned out to be reliable. * * *"

In United States Fidelity & Guaranty Co. v. Miller, supra, Judge Bouldin was careful to point out that the complainants made a personal appearance before the mayor (ex officio city recorder, i. e., with power himself to issue search warrants after a hearing). The mayor seemingly being in doubt as to his territorial jurisdiction, in effect, took the depositions of the complainants and passed them on to the sheriff who, in turn, appeared before the magistrate.

■ Search warrants being issued ex parte without notice, the proof before the magistrate need not be such as would support a conviction of guilt, but should, in all events, produce an independent judicial determination.

In the instant case, the deputy sheriff, on the record before us, submitted a deposition in the form of an affidavit which stated that Mrs. Brown was in possession of a prohibited liquor, indicating his direct knowledge thereof. In such case, this proof being direct and positive was sufficient to support the warrant without cross-examination. However, it did not contain the actual basis upon which the officer sought to procure the warrant.

In Walker v. Graham, 228 Ala. 574, 154 So. 806, the court said:

"* * * no one will be permitted to wrongfully procure the issuance of a process by practicing * * * imposition upon the court or authority, * * * though it be ever so regular upon its face. * * *"

■ Nor can we take Mrs. Brown's acquiescence in the search as a waiver or consent. After all, in the interest of tranquillity, the citizen presented with what purports to be a valid order of a court should obey it. We find Simpson, J., in Bull v. Armstrong, 254 Ala. 390, 48 So.2d 467, saying:

"One is not held to have consented to the search of his premises where it is accomplished pursuant to an apparently valid search warrant. * *"

■ Because of the surface appearance of validity of the affidavit and warrant which led to the search, it was not incumbent upon the defendant to make a pretrial motion to suppress.

Nor is there any evidence to take this case out of the general rule that a search must rest upon a warrant. In Weldon v. State, supra, we said:

"The offense for which this appellant was arrested being a misdemeanor, neither actual belief in the guilt of the appellant, nor reasonable grounds to suspect guilt constitutes a basis for arrest without a warrant. * * *" Citing authorities.

What might have been our ruling if the State had not attempted to bolster the oral evidence by the introduction of the affidavit and search warrant we put aside as not presented.

The judgment of the court below is due to be reversed. Inasmuch as the evidence must be suppressed, though not returned to the defendant because it is contraband, judgment is here rendered discharging the defendant.

Reversed and rendered.