228 So.2d 30

Samuel J. AGEE, Jr.

v.

STATE.

1 Div. 17.

Court of Criminal Appeals of Alabama.

Nov. 11, 1969.

C. Wayne Loudermilch and Robert M. Harper, Mobile, for appellant.

204

MacDonald Gallion, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant stands convicted of the offense of buying, receiving, concealing, etc., stolen property.

The facts are set out in appellant's brief, as follows:

"The home of Miss Carolyn Chestak in Mobile, Alabama, was broken into on June 22, 1964, and numerous items were stolen. Two of the items, a watch and diamond pin, taken from her home, were admitted into evidence over the defendant's objection. She testified that certain other articles, i. e., a Kodak camera, class ring, gold bracelet, and a Westclox Clock, were also stolen and that these items were later returned to her by the police. These articles were not offered into evidence by the prosecution.

"It appears from the evidence that on October 29, 1964, several Mobile Police Officers including Detectives Mingus and Cross went to a house located at 2813 Harper Street in Mobile. Mingus knocked at the door, the defendant's sister answered and let them in. The defendant was not there at the time. The officers had gone there to talk with defendant concerning his association with a juvenile who had apparently been in some trouble with the police. Upon entering the house, Mingus stated he observed numerous articles of merchan-dise lying around, i. e., clothing, luggage, radios, bedspreads, etc. He then left the house and telephoned headquarters requesting a search warrant. The warrant was obtained and brought to Mingus and Cross by Detective Pounder.

"The warrant was served on the occupants of the house, defendant's sisters, by Mingus and Cross. Mingus testified that, after the warrant was served, one of the girls stated 'that if it was stolen she didn't need a warrant anyway, she wanted it out of her house.' Cross testified similarly as to statements made by the girl.

"The defendant was a resident of the house on Harper Street and a part of that dwelling was recognized by the occupants as defendant's. The search was directed at property brought to the house by defendant. The items seized in the search were taken from defendant's room. Some of the merchandise found in the house was described as being the same as that taken from the Chestak dwelling four months earlier, i. e., camera, gold bracelet, class ring and Westclox clock.

"The watch and diamond pin taken from the Chestak home were not found at the defendant's house. Detective Cross testified that the day following the search of the Harper Street house, October 21, 1964, he found the diamond pin in Maxie's Pawn Shop in Mobile. The same day he located the wrist watch at Joe's Pawn Shop in Mobile.

"The owner of Maxie's Pawn Shop, Max Lipsich, testified that he remembered taking the diamond pin in pawn and identified the defendant as the person who pawned several items in his shop. There was no evidence connecting the defendant with the wrist watch and no evidence that he pawned it at Joe's Pawn Shop.

"At trial, the State could not produce the search warrant. Detective Cross stated that he had looked through the police files and could not find it.

"The defense moved to suppress any evidence of items found as a result of the search of the Harper Street house. The trial judge ruled there was voluntary consent for the search and denied the defense motion to suppress. The motion and rulings were made outside the presence of the jury following voir dire on the issue of the legality of the search.

"The defendant objected to testimony concerning items found in the house on the grounds that such items were the result of an illegal search and seizure and such objection was overruled in the presence of the jury. Similar objections with similar results were made to introduction into evidence of the watch and pin."

The appellant's statement of facts was adopted by the Attorney General, except to "note that Officer Mingus testified that upon investigating the merchandise in the house stated that he asked Detective Lawler to call for a search warrant and he (Mingus) waited on the front of the house for the warrant."

It is appellant's contention that the burden is upon the state to show a legal search and seizure when evidence is objected to at the trial as having been illegally obtained. Knox v. State, 42 Ala.App. 578, 172 So.2d 787.

In Duncan v. State, 278 Ala. 145, 176 So. 2d 840, the court said: "When police officer's want to search a person's home they must have either a search warrant or a knowing, voluntary permission, unless the search is incidental to a lawful arrest or there are other circumstances, not present in this case, which justify a departure from the rule. Waldron v. United States, 95 U.S. App.D.C. 66, 219 F.2d 37. See United States of America v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59."

■ Since no search warrant was introduced or proven and the search was not incidental to an arrest, the burden rested on the state to show voluntary consent to search.

In Bull v. Armstrong, 254 Ala. 390, 48 So. 2d 467, the court said: "One is not held to have consented to the search of his premises where it is accomplished pursuant to an apparently valid search warrant. On the contrary, the legal effect is that consent is on the basis of such a warrant and his permission is construed as an intention to abide by the law and not resist the search under the warrant, rather than an invitation to search." See also, Brown v. State, 42 Ala.App. 429, 167 So.2d 281; Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797.

■ The state's contention that the consent to search was secured before the warrant was obtained is without merit. The consent to the search clearly was not voluntary but was given pursuant to the search warrant.

■ The introduction of the evidence cannot be justified by the "in plain view" rule set out in Kelley v. State, 39 Ala.App. 572, 105 So.2d 687. The officer had no information the articles he saw upon entering the house at the invitation of defendant's sister were stolen until he called police headquarters and no proof was adduced to show the items he saw were in fact stolen. He testified:

"Well I seen to our right in the front portion of the house numerous items such as clothing, luggage, radios, bedspreads, things of this home use. * *.

"After I talked with the sister I walked over to the materials and merchandise and saw a .45 automatic laying on one of the suitcases, right at, I don't remember if it was some clothing or bedspreads, I'm not sure, but it was laying out. * * *.

"Well I took the serial number off the .45 and asked Det. McLawler to call headquarters and tell them what we found to see if this merchandise was stolen."

Since there was no evidence tending to connect defendant with the watch found at Joe's Pawn Shop, it was error to introduce it in evidence.

The judgment is due to be and hereby is reversed and the cause remanded.

Reversed and remanded.

